IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GINA TORRES, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-CV-1525-DDN |
| | ) | |
| CITY OF ST. LOUIS, ET AL. | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANT CITY OF ST. LOUIS' MOTION TO DISMISS**

COME NOW Plaintiffs and for Plaintiffs' Memorandum in Opposition to Defendant City of St. Louis' Motion to Dismiss and state as follows:

**I.  LEGAL STANDARD.**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009). Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* A district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).

**II.  PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO STATE A CLAIM BASED ON A MUNICIPAL CUSTOM OR POLICY IN THE AMENDED COMPLAINT.**

"'Official policy' in the relatively narrow sense of discrete, consciously chosen courses

1

of action by 'policymakers' is not the only basis for imposing municipal liability. 'Custom, or usage,' in the exact language of § 1983, may also serve." *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. N.C. 1987), citing *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658 (1978)(Municipal liability applies "when implementation of [municipality's] official policies or established customs inflicts the constitutional injury.") "Local governments may also be sued for constitutional violations arising out of governmental custom, even if such custom 'has not received formal approval through the body's official decision making channels.'" *Robinson v. St. Louis County*, 2008 WL 1701170 (Mo. E.D. April 9, 2008), citing *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 690-91 (1978). Inaction or laxness by supervisory personnel can constitute government custom if it is permanent and well settled. *See Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 807 (8th Cir. 1994).

Furthermore, it is not necessary that a municipal employee be liable in his or her individual capacity for municipal liability to attach "where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation." *See S.L. v. St. Louis Metro. Police Dep't Bd. of Comm'rs*, 2012 U.S. Dist. LEXIS 116370, 26-27 (E.D. Mo. Aug. 17, 2012), *citing Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002).

Plaintiffs' Complaint sets forth ample facts in support of Plaintiff's claim that the shooting was the result of the customs and usages of the St. Louis Metropolitan Police Department, of which the City of St. Louis knew or should have known. The facts alleged include:

- The officers of the St. Louis Metropolitan Police Department use excessive force without regard for the need for the use of force, or without regard for the legality of its use;

- The officers of the St. Louis Metropolitan Police Department conspire with one another to "cover" for and protect one another from criminal and/or civil sanctions that might arise from the violation of the constitutional rights of citizens;

- The officers of the St. Louis Metropolitan Police Department engage in conduct that violates the constitutional rights of citizens with whom they come in contact, including, but not limited to arresting, detaining and prosecuting people in violation of the constitution and laws, both by the acts and means by which they are accomplished;

- The officers do not use the least intrusive means of force necessary and the officers, by their words or actions, escalate encounters with citizens creating or causing the need for officers to use force or to use more force than otherwise would have been required;

- The officers unlawfully and unreasonably use deadly force to combat non-deadly force, without giving subjects an opportunity to comply, and in other situations that could be controlled by the use of other means;

- Additionally, on information and belief, the officers of the Department prior to the execution of this search warrant had a practice and custom of fraudulently concocting affidavits, making false statements knowingly or with reckless disregard for the truth in support of search warrants;

- The practice and custom of fraudulently concocting affidavits in support of search warrants has included the use by officers of fictitious information purportedly from confidential informants and in boilerplate assertions regarding criminal activity purportedly observed on certain premises;

- On information and belief, the actions of officers of the Department in fraudulently concocting affidavits has in the past previously resulted in at least one officer leaving the Department under investigation, after evidence emerged that he had manufactured numerous affidavits in support of search warrants which were substantially identical or verbatim, with only the address and names changed. On information and belief, criminal charges were never pressed or pursued against that officer in spite of the foregoing.

- Defendants have actual notice of these pervasive customs, practices and usages because, among other things, a pattern of prior incidents of shootings and other use of excessive force by officers. Despite these prior incidents, Defendants and others failed to train and supervise their officers, have done nothing to remedy these pervasive customs, practices and usages, and in fact have turned a "blind eye" to them.

- The failure to train, discipline or supervise by Defendants has resulted in members of the St. Louis Metropolitan Police Department using excessive force as a matter of custom in violation of clearly established law. The failure to train, supervise or discipline the Department's officers, including Defendant Officers, is not objectively reasonable.

- This pattern of prior incidents of excessive force included multiple incidents of the improper use of lethal force, including officer's use of firearms.

- Despite hundreds of allegations of excessive force and physical abuse brought against officers of the St. Louis Metropolitan Police Department in the years prior to the shooting,

3

charges against officers were almost never sustained. Furthermore, on information and belief, many additional instances of excessive force were known to the Department but never resulted in charges against the officers involved, such that these statistics significantly understate the extent and scope of the constitutional violations.

*See Amended Complaint, paras. 35-38; 64.*

The courts have found that these facts are more than sufficient to allege a widespread custom and practice of use of excessive force, and the City and Department's notice of that custom and should be given the opportunity to demonstrate them to the Court. Indeed, the Honorable Audrey G. Fleissig of this Court recently held that essentially identical factual allegations were sufficient to state a claim based on a custom of use of excessive force by Defendant City of St. Louis in an excessive force case, and that the plaintiff should therefore be entitled to perform discovery to develop the record with respect to these issues. *See Morgan-Tyra et al. v. City of St. Louis et al*, Case No. 4:18-CV-01799-AGF (October 30, 2019) at 11-12, citing *Simpson v. Ferry*, 202 F. Supp. 3d 444, 453 (E.D. Pa. 2016).[1]

Defendants are once again trying to litigate disputed questions of material fact via a motion to dismiss for failure to state a claim. This custom and practice claim is clearly "plausible on its face", and as such Plaintiffs have stated a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (U.S. 2007).

### III. PLAINTIFFS' AMENDED COMPLAINT ALSO SUFFICIENTLY ALLEGES A FAILURE TO TRAIN CLAIM.

The inadequacy of police training may serve as the basis for §1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A local government may be liable for failure to properly train its employees if the local government was on notice of its

---

[1] Plaintiffs further note that their allegations regarding the pattern and custom of repeated use of excessive and lethal force are clearly "plausible" given the incidents and concerns regarding the St. Louis Police Department's use of force described in the local media on a regular basis.

inadequate training. *See Hinesley v. City of Lake Ozark, Mo.,* No. 08-04294-CV-C-NKL, 2010 WL 3613996, at *10 (W.D. Mo. Sept. 8, 2010). "If a municipality fails to train its police force…so that it inevitably results in police misconduct, the municipality may fairly be said to have authorized the violations." *Warren v. City of Lincoln, Nebraska*, 816 F.2d 1254, 1262 (8th Cir. 1987) (Ruling that the district court committed reversible error by dismissing plaintiff's claims that the municipality failed to train its police officers properly and that this failure caused his injuries).

As set forth above, the failure to address the customs and usages of the Department, including in regards to the use of lethal force, as described in Counts III and VII of Plaintiffs' Amended Complaint includes the allegation that the department failed to remedy these customs and usages through additional training of officers. Plaintiffs' failure to train allegations must be taken in the context of the allegations regarding these customs and usages. The allegations set forth in Plaintiffs' Amended Complaint support Plaintiff's allegation that Defendants' use of excessive force was the result of a failure to address, through training, its officers' pattern and practice of using excessive force. The City's failure to do so, despite this knowledge, reflects a "deliberate and conscious choice" by Defendant.

Furthermore, a §1983 failure-to-train claim "where **'a violation of [a] federal right is a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations'"** particularly in the context of officers' use of firearms. *See Young v. City of Providence,* 404 F.3d 4, 29 (1st Cir. 2005) citing *County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 409 (1997) and *City of Canton v. Harris*, 489 U.S. 378, 390 n. 10 (1989). Juries may infer deliberate indifference from a municipality's failure to have adequate safeguards for dealing with situations fraught with risk. *See Smith v. District of Columbia*, 413 F.3d 86, 100 (D.C. Cir. 2005). The facts alleged, and the reasonable inferences therefrom, show a pattern and practice of excessive and unreasonable use of lethal force, and a failure to remedy that pattern and practice through additional training.

Plaintiffs' allegations, taken together, clearly set forth a cause of action for failure to train that is "plausible on its face", and as such Plaintiffs have stated a cause of action. *See Twombly,* 550 U.S. at 570; *McDonald v. City of Florissant*, 2010 WL 4272735, at *2 (E.D.Mo. 2010) ("Plaintiff alleges that Gerwitz conducted an unjustified warrantless search of her home, outside his own jurisdiction, and that this was a result of the City's failure to train its force adequately. These allegations state a claim that is plausible on its face and are sufficient to survive a motion to dismiss.")

## IV. DEFENDANT CITY OF ST. LOUIS HAS WAIVED SOVEREIGN IMMUNITY AS TO PLAINTIFFS' STATE LAW CLAIMS.

Defendants argue that Plaintiffs' state law claims are barred by sovereign immunity. However, Section 537.610 R.S.Mo. provides that sovereign immunity may be waived by a political subdivision of the State of Missouri, such as the City of St. Louis, by the purchase of liability insurance.

Section 537.610 R.S.Mo. provides for waiver of sovereign immunity through the purchase of insurance or the creation of a self-insurance plan, and provides as follows:

> . . . Each political subdivision of this state . . . may purchase liability insurance for tort claims, made against the state or the political subdivision, . . . . Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section and in such amount and for such purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state. Section 537.610 RSMo.

"This section plainly provides an '**independent basis for waiving sovereign immunity**-- a basis cemented in the existence of coverage for the damage or injury at issue under the language of the insurance policy.'" *Hummel v. St. Charles City R-3 Sch. Dist.*, 114 S.W.3d 282, 284 (Mo.App. 2003), *citing State ex rel. Cass Medical Center v. Mason*, 796 S.W.2d 621, 624 (Mo. banc 1990).

Plaintiffs' Amended Complaint alleges that:

44. Furthermore, and pleading in the alternative, Defendant Officers' actions were taken within the course and scope of their employment with the City of St. Louis and the St. Louis Metropolitan Police Department, and Defendant City of St. Louis has waived sovereign immunity as to the actions of its agents and employees, the Officer Defendants, undertaken in the course of their official duties, in that City of St. Louis has obtained a policy or self-insurance plan which is liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy a judgment in this action. Namely, Defendant City of St. Louis obtains insurance from the Public Facilities Protection Corporation, a not-for-profit corporation which is funded, at least in part, by annual payments from the City. On information and belief, the funds are later disbursed by the corporation to pay any and all claims against the City, including claims against City police officers relating to the use of excessive force. The coverage provided by the PFPC constitutes insurance or, in the alternative, a self-insurance plan, for purposes of Section 537.610 R.S.Mo.

*Amended Complaint, para. 44.*

The City then contends that sovereign immunity has not been waived, because the coverage was created pursuant to authority from a City ordinance which limits the scope of such coverage. The City contends that Plaintiffs' claims lie outside the scope of the coverage set forth in the ordinance, and therefore no waiver has occurred. However, **whether sovereign immunity is waived in a particular case depends on whether the plaintiff's claim falls within the purposes covered by the defendant's *policy*.** *Hummel*, 114 S.W.3d at 284 (Mo.App. 2003). Therefore it is not the language of the ordinance cited by Defendant that determines the issue of sovereign immunity waiver, but the actual scope of coverage obtained by the City. Plaintiff has clearly pleaded that the PFPC operates to insure the City against "any and all claims against the City, including claims against City police officers relating to the use of excessive force." *Amended Complaint, para. 44.*

Indeed, several recent decisions in the Eastern District have **denied Motions to Dismiss on the basis of sovereign immunity under indistinguishable circumstances** due to the existence of the Public Facilities Protection Corporation and the coverage it provides for claims of police misconduct. *See Fortenberry v. City of St. Louis*, No. 4:18-CV-01937-JCH, 2019 WL 1242671, at *7 (E.D.Mo. March 18, 2019); *Aldridge v. City of St. Louis, Missouri*, No. 4:18-CV-

1677 CAS, 2019 WL 1695982, at *13 (E.D.Mo. April 17, 2019); *Morgan-Tyra et al. v. City of St. Louis et al*, Case No. 4:18-CV-01799-AGF at *18 (October 30, 2019).

As the Honorable Charles A. Shaw held in *Aldridge*:

Here, the complaint alleges that the City either obtains insurance from or is self-insured by the PFPC to "pay claims against the City" "for claims, judgments, and other related legal matters." The Court finds these factual allegations are substantially equivalent to those held sufficient to survive a motion to dismiss in Fortenberry, i.e., that the City "self-insures" through the PFPC to cover "all claims." 2019 WL 1242671, at *7. Accepting the complaint's allegations as true, and giving them the reasonable inferences that arise therefrom, plaintiff has adequately pleaded that the City has waived sovereign immunity under § 537.610.1 by obtaining insurance from or self-insuring through the PFPC for the state law tort claims in this case.

The City's motion to dismiss the state law tort claims in Counts IV, V, VI, and VIII on the basis of sovereign immunity will therefore be denied.

*Aldridge,* 2019 WL 1695982, at *13.

In the alternative, and due to inconsistencies between the City of St. Louis' allegations here and its own prior statements regarding claims paid by the PFPC, Plaintiffs should be permitted to perform discovery on this issue, to determine the actual scope of matters insured by the PFPC, including whether the PFPC has provided coverage for claims relating to police misconduct. *See Lombardo v. Saint Louis City*, 2017 WL 2618270, at *3 (E.D.Mo. 2017) (Plaintiff not permitted to perform discovery regarding the existence of responsive insurance policies where the insurance exception to sovereign immunity was not pleaded in the complaint, but would be granted leave to amend).

WHEREFORE Plaintiffs respectfully request that the Court enter its Order denying Defendant City of St. Louis' Motion to Dismiss, and for any other relief the Court deems just and appropriate, the premises considered.

8

Respectfully submitted,

DOWD & DOWD, P.C.

By:   /s/ Richard K. Dowd
      Richard K. Dowd (33383)
      Alex R. Lumaghi (56569)
      211 N. Broadway, Suite 4050
      St. Louis, MO 63102
      (314) 621-2500
      (314) 621-2503 Facsimile
      rdowd@dowdlaw.net
      alex@dowdlaw.net

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

    I hereby certify that the above motion was electronically filed this 9th day of December, 2019 and a copy was served by the Court's electronic delivery system on all attorneys of record.

                /s/ Richard K. Dowd