Deposition of:

# Officer Robert Skaggs

Case:

## Gina Torres, et al.
v.
City of St. Louis, et al.

Date:

## 02/05/2020



360 Litigation Services
10097 Manchester Rd, Ste 102
St. Louis, Missouri 63122

360LitigationServices.com
314-394-2206

EX. N

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE EASTERN DISTRICT OF MISSOURI

3                      EASTERN DIVISION

4

5   GINA TORRES and DENNIS L. TORRES,

6

7   Plaintiffs,

8

9    vs.                          Case No. 4:19-cv-01525-DDN

10

11  CITY OF ST. LOUIS, ET AL.,

12

13  Defendants.

14

15

16

17          VIDEOTAPED DEPOSITION OF OFFICER ROBERT

18  SKAGGS, taken on behalf of the plaintiffs, at the

19  St. Louis City Counselor's Office, 1200 Market Street,

20  Room 314, City Hall, in the city of St. Louis, state

21  of Missouri, on Wednesday, the 5th day of

22  February, 2020, before Heather L. Shallow, Certified

23  Court Reporter, Registered Professional Reporter,

24  Registered Merit Reporter.

25

```
 1   APPEARANCES OF COUNSEL:

 2


 3        FOR THE PLAINTIFFS:

 4             Richard K. Dowd, Esq.

 5             Dowd & Dowd, P.C.

 6             211 North Broadway - Suite 4050

 7             St. Louis, Missouri   63102

 8             (314) 621-2500

 9             rdowd@dowdlaw.net

10

11        FOR THE DEFENDANTS:

12             Erin K. McGowan, Esq.

13             City Counselor's Office

14             1200 Market Street

15             Room 314, City Hall

16             St. Louis, Missouri   63103

17             (314) 622-4618

18             McGowanE@stlouis-mo.gov

19

20        ALSO PRESENT:

21             Steve Johnston, Legal Video Specialist

22             360 Litigation Services

23             10097 Manchester Road - Suite 102

24             St. Louis, Missouri   63122

25             (314) 394-2206
```

```
 1                    INDEX                          PAGE

 2      Examination by Mr. Dowd                         4

 3

 4

 5              PLAINTIFF'S EXHIBITS                   PAGE

 6      1 - 8x10 photographs (51)                       16

 7      2 - 8x10 photograph                             20

 8      3 (referenced) - 8x10 photograph                24

 9      5 (referenced) - 8x10 photograph                23

10

11      (Original exhibits retained by Mr. Dowd.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      OFFICER ROBERT SKAGGS,

2   of lawful age, having been first duly sworn to testify

3   the truth, the whole truth, and nothing but the truth

4   in the case aforesaid, deposes and says in reply to

5   oral interrogatories propounded as follows, to wit:

6            THE VIDEOGRAPHER:  We are on the record at

7   1:07.  Today's date is February 5th, 2020, and we are

8   at the office of the St. Louis City Counselor.  The

9   address is 1200 Market Street, St. Louis, Missouri.

10           We are here today for the deposition of

11  Officer Robert Skaggs to be taken in the case of Gina

12  Torres versus City of St. Louis.

13           At this time would counsel identify

14  themselves for the record, please.

15           MR. DOWD:  Richard Dowd for the plaintiff.

16           MS. MCGOWAN:  Erin McGowan for the

17  defendants.

18           THE VIDEOGRAPHER:  Thank you.  Would the

19  court reporter please swear in the witness.

20           (Oath was administered.)

21                    EXAMINATION

22  QUESTIONS BY MR. DOWD:

23       Q.  Could you state your name for the record,

24  please?

25       A.  Officer Robert Skaggs.

1    Q.  Officer, my name's Richard Dowd, as you

2    know.  I'm going to be asking you some questions this

3    afternoon.  If I at any time ask a question that you

4    don't fully hear and understand, would you make me

5    repeat it until I -- until you do?

6    A.  Yes, sir.

7    Q.  Can you tell the jury where -- where you

8    were born and raised?

9    A.  St. Louis, Missouri.

10   Q.  Okay.  And you attended schools here?

11   A.  Yes.

12   Q.  Okay.  And can you tell the jury about your

13   education?

14   A.  I graduated high school and college.

15   Q.  Okay.  Where'd you go to high school and

16   college?

17        MS. MCGOWAN:  Can we go off the record for a

18   moment?

19   Q.  (By Mr. Dowd)  It's okay.  If you don't want

20   to answer it, that's fine.  Do you mind telling us

21   where you went to college?

22   A.  Yeah.  Missouri Baptist University.

23   Q.  Okay.  Okay.  And what was your degree in?

24   A.  Accounting.

25   Q.  Okay.  And then can you tell us

1    approximately what year that was?

2         A.   When --

3         Q.   You graduated college.

4         A.   1999.

5         Q.   All right.  And what did you do after that?

6         A.   I went to work.

7         Q.   Okay.  At -- did you have a job before you

8    were a police officer?

9         A.   Yes, I did.

10        Q.   Okay.  What did you do?

11        A.   Before I was a police officer?

12        Q.   Yes, sir.

13        A.   I was a account portfolio manager.

14        Q.   Okay.  And how long did you do that?

15        A.   I don't remember.

16        Q.   Okay.  And what year did you go on the

17   depart -- did you do anything between that account

18   management and the police department?

19        A.   No.

20        Q.   Okay.  What year did you go on the

21   department?

22        A.   I started at the academy September of 2002.

23        Q.   Okay.  And joined the department after the

24   academy?

25        A.   Yes.

1       Q.  Have you always been with the St. Louis

2  Metropolitan Police Department?

3       A.  Yes.

4       Q.  All right.  And what have your duties been

5  since that time?

6       A.  I've done -- worked on the Second District,

7  Third District.  I was a detective in South Patrol

8  Bureau --

9       Q.  Okay.

10       A.  -- for approximately five years.  I was in

11  -- in Force Investigation Unit for four years, and

12  right -- and I'm currently assigned to the Bureau of

13  Community Policing.

14       Q.  What does the Bureau of Community Policing

15  do?

16       A.  That is ran by a lieutenant colonel who

17  oversees the police officers in -- in -- in that.

18       Q.  How long were you on the Force Investigation

19  Unit?

20       A.  I believe it was -- I was in there four

21  years.

22       Q.  Okay.  And was that under Lieutenant

23  Engelhardt?

24       A.  Yes.

25       Q.  Do you know how long he's been the -- the

1    commander of the Force Investigation Unit?

2         A.  He started -- when he started the unit,

3    that's when I came down, so he was there for about

4    four years.

5         Q.  Okay.  Can you tell us the first time -- are

6    you familiar with the neighborhood 54 -- 5414 South

7    Kingshighway?

8         A.  I mean, I know where it's at, yes.

9         Q.  Okay.  Have you ever lived in that area?

10        A.  Yes.

11        Q.  And where did you live at -- do you still

12   live there?

13        A.  No, I do not.

14        Q.  Okay.  What street did you live on?

15        MS. MCGOWAN:  I'm going to object.

16        Q.  (By Mr. Dowd)  I'm not going to ask you for

17   the address.  Just -- just the street you lived on.

18        MS. MCGOWAN:  We're going to seek a

19   protective order on this issue.  I think the officer

20   is --

21        Q.  (By Mr. Dowd)  Okay.  Let me -- let me

22   phrase it this way:  How far did you live from 5414

23   South Kingshighway?  Was it in the immediate vicinity,

24   within a block or two or three or four?

25        A.  No.  It was a mile or so.

1      Q.  Okay.  Did you know any officers that lived

2   in that -- even closer still?  If you were a mile

3   away, did you know any officers that lived closer to

4   5414 than you?

5      A.  When I was there?

6      Q.  Yes.

7      A.  No.

8      Q.  And what about now?

9      A.  No, I don't know any officers that live over

10  there.

11     Q.  Living around in that neighborhood?

12     A.  Correct.

13     Q.  Okay.  What was the first thing you -- were

14  you involved in any of the investigation leading up to

15  the execution of the search warrant?

16     A.  No.

17     Q.  What was the first thing you heard about the

18  search warrant?

19     A.  When we were informed that there was an

20  officer-involved shooting --

21     Q.  Okay.

22     A.  -- at there.

23     Q.  Were you on the force involved unit at the

24  time?

25     A.  Yes.

1       Q.  Okay.  And what were -- what were your

2  duties for the use of force investigation?

3       A.  Our duties were involved -- we investigated

4  any officer-involved shooting, either an officer shot

5  someone or the officer themselves were shot, and any

6  other instance deemed by the chief of police we would

7  handle.

8       Q.  Okay.  If it was -- if it was some other

9  form of a -- of force?

10       A.  Correct.

11       Q.  Okay.  And what -- what are the duties of

12  the use of force unit?

13       A.  What do you mean by "duties"?

14       Q.  What are they supposed to do as far -- once

15  they're -- let's say there is an officer-involved

16  shooting.  What are their duties?

17       A.  We go to the scene, we obviously try to

18  document the scene the best we can, then we do an area

19  canvass and attempt to locate any witnesses.

20       Q.  Okay.  All right.  And when you say

21  "document the scene," do you mean with photographs and

22  that type of thing?

23       A.  We have a -- Jamie Simpher used to be in our

24  unit.  She used to work with ETU so she worked closely

25  with the ET officer on these scenes.

1      Q.   Okay.

2      A.   So she would go around and document -- not

3 -- I mean not take photographs but take notes of where

4 certain things were located.

5      Q.   Okay.  Was -- was that the Evidence

6 Technician's Unit's job or the Use of Force Unit?

7      A.   ETU takes photographs and documents all of

8 -- any evidence that is at the scene.

9      Q.   Okay.

10      A.   We just take a mental note of what's at the

11 scene just in case somebody wants to know what was at

12 the scene itself.

13      Q.   Okay.  So you don't take photographs --

14      A.   Not at the --

15      Q.   -- at the scene?

16      A.   Not at the scene, no.

17      Q.   Okay.  All right.  That's all up to Officer

18 Sommers in this instance?

19      A.   In -- yes, who is assigned to ETU.

20      Q.   Okay.  Diagrams, would that also be up to

21 the ETU?

22      A.   Yeah.  We -- we do -- do not do diagrams.

23      Q.   Okay.  All right.  What other duties is the

24 Use of Force Unit supposed to fulfill when there has

25 been an officer-involved shooting?

1      A.   Like I said, we do an area canvass for

2  witnesses.   We go door to door, talk to the neighbors,

3  document -- that's documented in the report.   Then we

4  also see if there's any video surveillance equipment

5  within the area, and if there is, we try to retrieve

6  that information.

7      Q.   Okay.   And were you able to perform

8  interviews in this assistance?

9      A.   Me personally, no.

10     Q.   You did not?

11     A.   I did not.

12     Q.   Okay.   What about with regard to

13  surveillance equipment?

14     A.   Me personally, no.

15     Q.   Okay.   Are you aware of whether -- I know

16  interviews were done.   Are you aware of whether or not

17  there was any surveillance cameras or anything that

18  produced any evidence in this instance?

19     A.   There was a video recording on a cell

20  phone --

21     Q.   Okay.

22     A.   -- that was captured --

23     Q.   All right.

24     A.   -- that I was aware of.

25     Q.   All right.   Anything else you're aware of?

1      A.   No.

2      Q.   Okay.  All right.  So, if you would, just

3  tell the jury what -- what all you did from start to

4  finish from the time you arrived on the scene.

5      A.   When I arrived, I went inside just to get a

6  quick layout of the front room and that.  At that

7  time, there was several people inside the house, ETU

8  and that, so I went outside and I started to help

9  canvassing the area for witnesses.

10      Q.   I see.  So can you tell us what rooms you

11  went into when you entered the home?

12      A.   As you walk through the front door --

13      Q.   Mm-hmm.

14      A.   -- you make a left which is -- I assume

15  that's the living room.

16      Q.   Okay.

17      A.   Then I went into the dining room.  At that

18  time, I came back outside.

19      Q.   All right.  You didn't go into the back

20  rooms or the bedroom?

21      A.   No.

22      Q.   All right.  And did -- did you record what

23  you saw in any way?

24      A.   No.

25      Q.   Handwritten notes --

1        A.   No notes.

2        Q.   -- with a dictaphone or anything?

3        A.   Nope.

4        Q.   Okay.  So you did canvass the neighborhood?

5        A.   Yes.

6        Q.   And who did -- you found some witnesses?

7        A.   I did not.

8        Q.   Okay.  Did you perform any interviews?

9        A.   I did not.

10       Q.   Okay.  How long were you at the scene?

11       A.   I don't remember.

12       Q.   Okay.  Did you do anything else at the scene

13  that -- that you -- other than what you've already

14  described as far as -- as far as observing the scene

15  of the shooting and -- and attempting to find

16  witnesses?

17       A.   Yes.  Later on while at the scene I was

18  directed to seize the gun.

19       Q.   All right.  Are you familiar with the

20  department's policies and procedures with regard to --

21  I don't want to use the word "confiscating," but

22  taking evidence from a scene where there's an

23  officer-involved shooting?

24       A.   I mean, there's really no specific order

25  directed to an officer-involved shooting with seizing

 1    stuff.  I mean, we do have -- I believe that there is

 2    special orders for ETU --

 3         Q.  Okay.

 4         A.  -- Evidence Technician Unit.

 5         Q.  And what does that special order say with

 6    regard to taking a weapon from the scene of a

 7    shooting?

 8         A.  I -- I couldn't tell you.  I haven't read it

 9    in a while.

10         Q.  Okay.  Is it the policies and procedures of

11    the department that everything's supposed to be

12    photographed before it's touched?

13         A.  That is correct.

14         Q.  Okay.  And nothing's supposed to be done to

15    it before it's photographed?

16         A.  Correct.

17         Q.  Okay.  With regard to -- well, what was the

18    next thing -- have we discussed everything you did at

19    the scene?  It's my understanding the photographs that

20    we're going to go through you took back at the

21    department?

22         A.  Yes.  Those are done at the police

23    headquarters.

24         Q.  Okay.  Is there anything else you did at the

25    scene other than take the -- the AK-47?

1        A.   No.   That is it.

2        Q.   That is it?

3        A.   Yes.

4        Q.   Okay.   I'm going to hand you what's been

5   marked Skaggs Plaintiff's Exhibit No. 1 and represent

6   to you that it is 51 photographs, and if you would --

7   I think you saw me marking them.   Is that -- are those

8   all the photographs you took at the -- at the time

9   that -- that you got back to the department

10  headquarters?

11       A.   From my recollection, yes.

12       Q.   Okay.   And can you just tell the jury what

13  -- what all those depict just in general?

14       A.   Yes.   The first picture is depicted of a

15  department-issued 9-millimeter Beretta with its

16  magazine and rounds.

17       Q.   Okay.   As far as those rounds, those are --

18  those are un -- unfired cartridges; correct?

19       A.   Correct.   Those would have came from the

20  magazine itself and one in the chamber.

21       Q.   Okay.   And was that Beretta 9-millimeter

22  used at the time of the execution of the warrant?   Do

23  you know?

24       A.   That I don't know.

25       Q.   Okay.   Why did you photograph that -- that

1    handgun?

2         A.  Because the officer was there at the --

3         Q.  All right.

4         A.  At the time I -- we didn't know if he fired

5    or not --

6         Q.  I see.

7         A.  -- until interviews were conducted later on.

8         Q.  Okay.  And with regard to the -- do you know

9    now whether or not that -- that Beretta was fired?

10        MS. MCGOWAN:  Objection.  Asked and

11   answered.

12        Q.  (By Mr. Dowd)  Do you know why you

13   photographed it?

14        A.  Because that gun was -- was used, was --

15   that -- shot was fired from that gun at the residence.

16        Q.  Okay.  Do you know how many shots were fired

17   from that gun at the residence?

18        MS. MCGOWAN:  I'm going to object.  It calls

19   for speculation.

20        Q.  (By Mr. Dowd)  If you know.

21        A.  It depends if that gun was fully up to its

22   capacity.  So I may -- it's an assumption.  I -- I

23   don't know.

24        Q.  Okay.  But are you aware whether or not a

25   9-millimeter was fired by one of the officers at the

1    time of the execution of the warrant?

2              MS. MCGOWAN:   Object.   Speculation.

3         Q.   (By Mr. Dowd)   If you know.

4         A.   At the time, no.

5         Q.   Not at the time.   I mean now.   As of now do

6    you know whether a 9-millimeter was fired by any of

7    the officers at the time of the execution of the

8    warrant?

9         A.   After reading the report, yes.

10        Q.   Okay.   And do you know who it was that fired

11   that?

12        A.   No, I don't know.

13        Q.   Do you know how many shots were fired from

14   the 9-millimeter?

15             MS. MCGOWAN:   Objection.

16        A.   No, I don't.

17             MS. MCGOWAN:   Speculation.

18        Q.   (By Mr. Dowd)   Okay.   Okay.   You understand

19   not to answer if you don't know; correct?

20        A.   Yeah.

21        Q.   I don't want you guessing about anything.

22   You understand that, don't you?

23        A.   Yes, sir.

24        Q.   Okay.   So you had nothing to do with -- with

25   the collecting the ballistic evidence, the -- the

 1    shell casings or the bullets that were found at the

 2    scene?

 3          A.  No.

 4          Q.  Who -- who would have done that?

 5          A.  That would have been the ET officer.

 6          Q.  Okay.  And it's your understanding that was

 7    Officer Sommers?

 8          A.  That is correct.

 9          Q.  Okay.  The rest of these are pictures of the

10    officers in their SWAT uniforms and the rifles they

11    carried, et cetera?

12          A.  Yes.

13          Q.  Okay.  Anything other than that in those

14    photographs?

15          A.  The rifle itself, obviously, the magazine

16    and ammo.

17          Q.  Can I see that, please?  And what -- what

18    gun is that?

19          A.  I couldn't tell you what type of gun that

20    is.

21          Q.  Okay.  It's -- is it a .226?  Do you know?

22          MS. MCGOWAN:  Objection.  Asked and

23    answered.

24          Q.  (By Mr. Dowd)  Do you know why you took the

25    picture?

1          A.   Took the picture because the officers that

2     were involved fired their weapon.

3          Q.   One of them -- one of them fired this

4     weapon?

5          A.   That's one of the weapons that was fired,

6     yes.

7          Q.   Okay.  All right.  Okay.  And other than the

8     officers in their uniform -- in their SWAT gear and

9     the weapons that were fired at the time of the

10    execution of the search warrant, did you take any

11    pictures of anything else?

12         A.   No.

13         Q.   All right.  These go on the bottom.

14              Where was the AK-47 when you first saw it?

15         A.   It was laying on the right side of

16    Mr. Hammett.

17         Q.   I'm going to hand you what's been marked

18    Plaintiff's Exhibit No. 2, Skaggs Exhibit 2, and ask

19    you to identify that for the jury, please.

20         A.   It's Mr. Hammett, then it shows a rifle

21    laying along his side.

22         Q.   Okay.  And that's the rifle that you took

23    into custody?

24         A.   Yes.

25         Q.   And took photographs of it at the scene?

1     A.   No, I did not take photographs at the scene.

2     Q.   Who did that?

3     A.   That would have been the ET officer.

4     Q.   Okay.  Officer Sommers?

5     A.   I -- I don't know.

6     Q.   Did she do that before you took it?

7          MS. MCGOWAN:  Objection.  Foundation.

8     A.   Took what?

9     Q.   (By Mr. Dowd)  Took the gun, the AK-47 from

10    -- from that location where you first saw it that you

11    said was --

12    A.   What do you mean?  Did -- did she take what?

13    Q.   Did Officer Sommers take photographs -- you

14    didn't take pictures of the AK-47?

15    A.   No, I did not.

16    Q.   Did Officer Sommers?

17    A.   I don't know.

18    Q.   Okay.  Have you ever seen any pictures of

19    it?

20    A.   Just now, yes.

21    Q.   The AK-47.  Other than this one.  Of just

22    the gun.

23    A.   Yes.

24    Q.   And do you know who took that?

25    A.   No, I don't know.

1     Q.  Do you know when it was taken?

2     A.  No, I don't know.

3     Q.  Do department policies and procedures

4  require that the pictures be taken before the evidence

5  is in any -- any way altered or -- or tampered with?

6     A.  Yes.

7     Q.  So if there were pictures of the gun taken,

8  it would have been before anything had been done to

9  it?

10          MS. MCGOWAN:  Objection.  Calls for

11  speculation.  Form.

12     Q.  (By Mr. Dowd)  Yeah, I think you've already

13  answered it.

14     A.  Yeah.

15     Q.  Is that fair?

16     A.  Pictures would have -- policy, pictures

17  would have been taken before that gun was ever moved.

18     Q.  Or touched?

19     A.  Touched.

20     Q.  So was the gun in the same condition when

21  you took it from the scene as it was when it was under

22  Isaiah in that picture?

23          MS. MCGOWAN:  Objection.  Form.

24     A.  When you --

25     Q.  (By Mr. Dowd)  The same condition.  Had

1   anybody done anything to it, touched it or -- or

2   fooled with it?

3       A.  I don't know.

4       Q.  All right.  But they're not supposed to

5   before the pictures are taken?

6       A.  They take the pictures.  Then once the

7   pictures are taken, I -- you know, ETU does what they

8   need to do.

9       Q.  And then they gave it to you to take back to

10  police headquarters?

11      A.  Correct.

12      Q.  Okay.  I'm going to hand you what's been

13  marked -- it's actually Exhibit 5 from Dr. Ely's --

14  Ely's deposition.  Did you see that at the scene?

15      A.  I don't remember.

16      Q.  Okay.  You don't remember seeing blood --

17  blood on the floor?

18          MS. MCGOWAN:  Objection.  Asked and

19  answered.

20      Q.  (By Mr. Dowd)  You don't remember seeing

21  blood on the floor?

22      A.  Like I said, I don't remember.

23      Q.  Okay.  Do you remember seeing blood under

24  Mr. Hammett and all over Mr. Hammett?

25      A.  I don't remember.

1    Q.  Can you identify that for the jury, please?

2    A.  That's a -- some sort of an assault rifle

3  with a magazine attached to it.

4    Q.  Is that the rifle that you took from the --

5  the scene of the -- of Isaiah's home?

6    A.  Yes.

7    Q.  Okay.  And that would have been taken before

8  you took it from the home?

9    A.  That would have been taken before it, yes.

10    Q.  Okay.  Can you -- just want to show it to

11  the jury briefly.  Can you identify anywhere on that

12  gun where there is any blood spots of any kind, drops

13  of any kind?

14        MS. MCGOWAN:  Objection.  Form.

15    Q.  (By Mr. Dowd)  You can answer.

16    A.  By looking at the picture, I don't see any

17  blood.

18    Q.  No blood?

19    A.  No.

20    Q.  I'll also show you another photograph of the

21  gun which appears to be the other side of the gun from

22  Plaintiff's Exhibit 3 from the Ely deposition.  That's

23  the same gun?

24    A.  Appears to be the same gun, yes.

25    Q.  And it's from -- it's the other side of the

1    gun?

2          A.   Yes.

3          Q.   Do you see any blood on that side of the

4    gun?

5          A.   By looking --

6               MS. MCGOWAN:   Objection.   Form.

7          A.   Looking at the pictures, no.

8          Q.   (By Mr. Dowd)   Okay.   Did you see anywhere

9    that it was documented in any of the reports by

10   Officer Sommers or anyone else that there was any

11   blood on that gun?

12         A.   I don't remember.

13         Q.   Okay.   Have you spoken with Dr. -- with

14   Officer Sommers about her investigation?

15         A.   No.

16         Q.   Okay.   Have you talked to anybody about it

17   other than your lawyer, the department's lawyer?

18         A.   About the case itself?

19         Q.   Yes.

20         A.   No.

21         Q.   Okay.   Is there anything else that you can

22   recall about your investigation with regard to the --

23   the shooting at 5414 South Kingshighway that we

24   haven't discussed here today?

25         A.   No.   My investigation was very limited in

1  this particular case.

2          MR. DOWD:  Okay.  I think that's all I have.

3          MS. MCGOWAN:  All right.  I have no

4  questions for you, Officer.  You have the right to

5  read through a copy of your deposition here today or

6  you can waive signature.

7          THE DEPONENT:  I can waive it.

8          MS. MCGOWAN:  Okay.  Thank you.

9          THE VIDEOGRAPHER:  This concludes the

10  deposition of Officer Robert Skaggs.  We are off the

11  record at 1:33.

12

13          SIGNATURE WAIVED BY AGREEMENT OF COUNSEL

14                  AND CONSENT OF WITNESS.

15

16

17

18

19

20

21

22

23

24

25

1      C E R T I F I C A T E

2

3          I, Heather L. Shallow, Certified Court Reporter

4      within and for the State of Missouri, duly

5      commissioned, qualified and authorized to administer

6      oaths and to certify to depositions, do hereby certify

7      that pursuant to notice/agreement in the cause now

8      pending and undetermined in the United States District

9      Court for the Eastern District of Missouri, Eastern

10     Division, to be used in the trial of said cause in

11     said court, I was attended at the City Counselor's

12     Office, 1200 Market Street, Room 314, City Hall, in

13     the city of St. Louis, State of Missouri, by the

14     aforesaid witness, and by the aforesaid attorneys, on

15     the 5th day of February, 2020.

16          That the said witness, being of sound mind and

17     being by me first carefully examined and duly

18     cautioned and sworn to testify the truth, the whole

19     truth, and nothing but the truth in the case

20     aforesaid, thereupon testified as is shown in the

21     foregoing transcript, said testimony being by me

22     reported in shorthand and caused to be transcribed

23     into typewriting, and that the foregoing pages

24     correctly set forth the testimony of the

25     aforementioned witness, together with the questions

1  propounded by counsel and remarks and objections of

2  counsel thereto, and is in all respects a full, true,

3  correct and complete transcript of the questions

4  propounded to and the answers given by said witness,

5  that signature of the deponent was waived by agreement

6  of counsel and of witness.

7       I further certify that I am not of counsel or

8  attorney for either of the parties to said suit, not

9  related to nor interested in any of the parties or

10  their attorneys.

11       Witness my hand at St. Louis, Missouri, this 12th

12  day of February, 2020.

13

14

15

16

17

18  _____

19  Heather L. Shallow, CCR, RPR, RMR

20  CCR No. 0442

21

22

23

24

25

**WORD INDEX**

**< 0 >**
**0442** 28:*20*

**< 1 >**
**1:07** 4:*7*
**1:33** 26:*11*
**10097** 2:*23*
**102** 2:*23*
**1200** 1:*19* 2:*14*
4:*9* 27:*12*
**12th** 28:*11*
**1999** 6:*4*

**< 2 >**
**2002** 6:*22*
**2020** 1:*22* 4:*7*
27:*15* 28:*12*
**211** 2:*6*
**226** 19:*21*

**< 3 >**
**314** 1:*20* 2:*8, 15,
17, 25* 27:*12*
**360** 2:*22*
**394-2206** 2:*25*

**< 4 >**
**4:19-cv-01525-DD
N** 1:*9*
**4050** 2:*6*

**< 5 >**
**51** 3:*6* 16:*6*
**54** 8:*6*
**5414** 8:*6, 22* 9:*4*
25:*23*
**5th** 1:*21* 4:*7*
27:*15*

**< 6 >**
**621-2500** 2:*8*
**622-4618** 2:*17*
**63102** 2:*7*
**63103** 2:*16*
**63122** 2:*24*

**< 8 >**

**8x10** 3:*6, 7, 8, 9*

**< 9 >**
**9-millimeter**
16:*15, 21* 17:*25*
18:*6, 14*

**< A >**
**able** 12:*7*
**academy** 6:*22, 24*
**account** 6:*13, 17*
**Accounting** 5:*24*
**address** 4:*9*
8:*17*
**administer** 27:*5*
**administered**
4:*20*
**aforementioned**
27:*25*
**aforesaid** 4:*4*
27:*14, 14, 20*
**afternoon** 5:*3*
**age** 4:*2*
**AGREEMENT**
26:*13* 27:*7* 28:*5*
**AK-47** 15:*25*
20:*14* 21:*9, 14,
21*
**AL** 1:*11*
**altered** 22:*5*
**ammo** 19:*16*
**answer** 5:*20*
18:*19* 24:*15*
**answered** 17:*11*
19:*23* 22:*13*
23:*19*
**answers** 28:*4*
**anybody** 23:*1*
25:*16*
**appears** 24:*21,
24*
**approximately**
6:*1* 7:*10*
**area** 8:*9* 10:*18*
12:*1, 5* 13:*9*
**arrived** 13:*4, 5*
**Asked** 17:*10*
19:*22* 23:*18*
**asking** 5:*2*
**assault** 24:*2*

**assigned** 7:*12*
11:*19*
**assistance** 12:*8*
**assume** 13:*14*
**assumption**
17:*22*
**attached** 24:*3*
**attempt** 10:*19*
**attempting** 14:*15*
**attended** 5:*10*
27:*11*
**attorney** 28:*8*
**attorneys** 27:*14*
28:*10*
**authorized** 27:*5*
**aware** 12:*15, 16,
24, 25* 17:*24*

**< B >**
**back** 13:*18, 19*
15:*20* 16:*9* 23:*9*
**ballistic** 18:*25*
**Baptist** 5:*22*
**bedroom** 13:*20*
**behalf** 1:*18*
**believe** 7:*20*
15:*1*
**Beretta** 16:*15,
21* 17:*9*
**best** 10:*18*
**block** 8:*24*
**blood** 23:*16, 17,
21, 23* 24:*12, 17,
18* 25:*3, 11*
**born** 5:*8*
**bottom** 20:*13*
**briefly** 24:*11*
**Broadway** 2:*6*
**bullets** 19:*1*
**Bureau** 7:*8, 12,
14*

**< C >**
**calls** 17:*18*
22:*10*
**cameras** 12:*17*
**canvass** 10:*19*
12:*1* 14:*4*
**canvassing** 13:*9*

**capacity** 17:*22*
**captured** 12:*22*
**carefully** 27:*17*
**carried** 19:*11*
**cartridges** 16:*18*
**Case** 1:*9* 4:*4,
11* 11:*11* 25:*18*
26:*1* 27:*19*
**casings** 19:*1*
**cause** 27:*7, 10*
**caused** 27:*22*
**cautioned** 27:*18*
**CCR** 28:*19, 20*
**cell** 12:*19*
**certain** 11:*4*
**Certified** 1:*22*
27:*3*
**certify** 27:*6, 6*
28:*7*
**cetera** 19:*11*
**chamber** 16:*20*
**chief** 10:*6*
**CITY** 1:*11, 19,
20, 20* 2:*13, 15*
4:*8, 12* 27:*11, 12,
13*
**closely** 10:*24*
**closer** 9:*2, 3*
**collecting** 18:*25*
**college** 5:*14, 16,
21* 6:*3*
**colonel** 7:*16*
**commander** 8:*1*
**commissioned**
27:*5*
**Community**
7:*13, 14*
**complete** 28:*3*
**concludes** 26:*9*
**condition** 22:*20,
25*
**conducted** 17:*7*
**confiscating,**
14:*21*
**CONSENT**
26:*14*
**copy** 26:*5*
**correctly** 27:*24*

**COUNSEL** 2:*1*
4:*13* 26:*13*
28:*1, 2, 6, 7*
**Counselor** 4:*8*
**Counsel's**
1:*19* 2:*13* 27:*11*
**COURT** 1:*1, 23*
4:*19* 27:*3, 9, 11*
**currently** 7:*12*
**custody** 20:*23*

**< D >**
**date** 4:*7*
**day** 1:*21* 27:*15*
28:*12*
**deemed** 10:*6*
**Defendants** 1:*13*
2:*11* 4:*17*
**degree** 5:*23*
**DENNIS** 1:*5*
**depart** 6:*17*
**department** 6:*18,
21, 23* 7:*2* 15:*11,
21* 16:*9* 22:*3*
**department-issue
d** 16:*15*
**department's**
14:*20* 25:*17*
**depends** 17:*21*
**depict** 16:*13*
**depicted** 16:*14*
**DEPONENT**
26:*7* 28:*5*
**deposes** 4:*4*
**DEPOSITION**
1:*17* 4:*10*
23:*14* 24:*22*
26:*5, 10*
**depositions** 27:*6*
**described** 14:*14*
**detective** 7:*7*
**Diagrams** 11:*20,
22*
**dictaphone** 14:*2*
**dining** 13:*17*
**directed** 14:*18,
25*
**discussed** 15:*18*
25:*24*

**DISTRICT** 1:*1, 2* 7:*6, 7* 27:*8, 9*
**DIVISION** 1:*3* 27:*10*
**document** 10:*18, 21* 11:*2* 12:*3*
**documented** 12:*3* 25:*9*
**documents** 11:*7*
**door** 12:*2, 2* 13:*12*
**Dowd** 2:*4, 5, 5* 3:*2, 11* 4:*15, 15, 22* 5:*1, 19* 8:*16, 21* 17:*12, 20* 18:*3, 18* 19:*24* 21:*9* 22:*12, 25* 23:*20* 24:*15* 25:*8* 26:*2*
**Dr** 23:*13* 25:*13*
**drops** 24:*12*
**duly** 4:*2* 27:*4, 17*
**duties** 7:*4* 10:*2, 3, 11, 13, 16* 11:*23*

**< E >**
**EASTERN** 1:*2, 3* 27:*9, 9*
**education** 5:*13*
**either** 10:*4* 28:*8*
**Ely** 24:*22*
**Ely's** 23:*13, 14*
**Engelhardt** 7:*23*
**entered** 13:*11*
**equipment** 12:*4, 13*
**Erin** 2:*12* 4:*16*
**Esq** 2:*4, 12*
**ET** 1:*11* 10:*25* 19:*5, 11* 21:*3*
**ETU** 10:*24* 11:*7, 19, 21* 13:*7* 15:*2* 23:*7*
**everything's** 15:*11*
**Evidence** 11:*5, 8* 12:*18* 14:*22* 15:*4* 18:*25* 22:*4*

**Examination** 3:*2* 4:*21*
**examined** 27:*17*
**execution** 9:*15* 16:*22* 18:*1, 7* 20:*10*
**Exhibit** 16:*5* 20:*18, 18* 23:*13* 24:*22*
**EXHIBITS** 3:*5, 11*

**< F >**
**fair** 22:*15*
**familiar** 8:*6* 14:*19*
**far** 8:*22* 10:*14* 14:*14, 14* 16:*17*
**February** 1:*22* 4:*7* 27:*15* 28:*12*
**find** 14:*15*
**fine** 5:*20*
**finish** 13:*4*
**fired** 17:*4, 9, 15, 16, 25* 18:*6, 10, 13* 20:*2, 3, 5, 9*
**first** 4:*2* 8:*5* 9:*13, 17* 16:*14* 20:*14* 21:*10* 27:*17*
**five** 7:*10*
**floor** 23:*17, 21*
**follows** 4:*5*
**fooled** 23:*2*
**Force** 7:*11, 18* 8:*1* 9:*23* 10:*2, 9, 12* 11:*6, 24*
**form** 10:*9* 22:*11, 23* 24:*14* 25:*6*
**forth** 27:*24*
**found** 14:*6* 19:*1*
**Foundation** 21:*7*
**four** 7:*11, 20* 8:*4, 24*
**front** 13:*6, 12*
**fulfill** 11:*24*
**full** 28:*2*
**fully** 5:*4* 17:*21*

**< G >**
**gear** 20:*8*
**general** 16:*13*
**GINA** 1:*5* 4:*11*
**given** 28:*4*
**going** 5:*2* 8:*15, 16, 18* 15:*20* 16:*4* 17:*18* 20:*17* 23:*12*
**graduated** 5:*14* 6:*3*
**guessing** 18:*21*
**gun** 14:*18* 17:*14, 15, 17, 21* 19:*18, 19* 21:*9, 22* 22:*7, 17, 20* 24:*12, 21, 21, 23, 24* 25:*1, 4, 11*

**< H >**
**Hall** 1:*20* 2:*15* 27:*12*
**Hammett** 20:*16, 20* 23:*24, 24*
**hand** 16:*4* 20:*17* 23:*12* 28:*11*
**handgun** 17:*1*
**handle** 10:*7*
**Handwritten** 13:*25*
**headquarters** 15:*23* 16:*10* 23:*10*
**hear** 5:*4*
**heard** 9:*17*
**Heather** 1:*22* 27:*3* 28:*19*
**help** 13:*8*
**high** 5:*14, 15*
**home** 13:*11* 24:*5, 8*
**house** 13:*7*

**< I >**
**identify** 4:*13* 20:*19* 24:*1, 11*
**immediate** 8:*23*

**INDEX** 3:*1*
**information** 12:*6*
**informed** 9:*19*
**inside** 13:*5, 7*
**instance** 10:*6* 11:*18* 12:*18*
**interested** 28:*9*
**interrogatories** 4:*5*
**interviews** 12:*8, 16* 14:*8* 17:*7*
**investigated** 10:*3*
**Investigation** 7:*11, 18* 8:*1* 9:*14* 10:*2* 25:*14, 22, 25*
**involved** 9:*14, 23* 10:*3* 20:*2*
**Isaiah** 22:*22*
**Isaiah's** 24:*5*
**issue** 8:*19*
**its** 16:*15* 17:*21*

**< J >**
**Jamie** 10:*23*
**job** 6:*7* 11:*6*
**Johnston** 2:*21*
**joined** 6:*23*
**jury** 5:*7, 12* 13:*3* 16:*12* 20:*19* 24:*1, 11*

**< K >**
**kind** 24:*12, 13*
**Kingshighway** 8:*7, 23* 25:*23*
**know** 5:*2* 7:*25* 8:*8* 9:*1, 3, 9* 11:*11* 12:*15* 16:*23, 24* 17:*4, 8, 12, 16, 20, 23* 18:*3, 6, 10, 12, 13, 19* 19:*21, 24* 21:*5, 17, 24, 25* 22:*1, 23* 23:*3, 7*

**< L >**
**lawful** 4:*2*
**lawyer** 25:*17, 17*

**laying** 20:*15, 21*
**layout** 13:*6*
**leading** 9:*14*
**left** 13:*14*
**Legal** 2:*21*
**lieutenant** 7:*16, 22*
**limited** 25:*25*
**Litigation** 2:*22*
**live** 8:*11, 12, 14, 22* 9:*9*
**lived** 8:*9, 17* 9:*1, 3*
**Living** 9:*11* 13:*15*
**locate** 10:*19*
**located** 11:*4*
**location** 21:*10*
**long** 6:*14* 7:*18, 25* 14:*10*
**looking** 24:*16* 25:*5, 7*
**LOUIS** 1:*11, 19, 20* 2:*7, 16, 24* 4:*8, 9, 12* 5:*9* 7:*1* 27:*13* 28:*11*

**< M >**
**magazine** 16:*16, 20* 19:*15* 24:*3*
**management** 6:*18*
**manager** 6:*13*
**Manchester** 2:*23*
**Market** 1:*19* 2:*14* 4:*9* 27:*12*
**marking** 16:*7*
**McGowan** 2:*12* 4:*16, 16* 5:*17* 8:*15, 18* 17:*10, 18* 18:*2, 15, 17* 19:*22* 21:*7* 22:*10, 23* 23:*18* 24:*14* 25:*6* 26:*3, 8*
**McGowanE@stlo uis-mo.gov** 2:*18*
**mean** 8:*8* 10:*13, 21* 11:*3* 14:*24*

15:1   18:5   21:12
mental   11:10
Merit   1:24
Metropolitan   7:2
mile   8:25   9:2
mind   5:20   27:16
MISSOURI   1:2,
21   2:7, 16, 24
4:9   5:9, 22
27:4, 9, 13   28:11
Mm-hmm   13:13
moment   5:18
moved   22:17

< N >
name   4:23
name's   5:1
need   23:8
neighborhood
8:6   9:11   14:4
neighbors   12:2
Nope   14:3
North   2:6
note   11:10
notes   11:3
13:25   14:1
nothing's   15:14
notice   27:7

< O >
Oath   4:20
oaths   27:6
object   8:15
17:18   18:2
Objection   17:10
18:15   19:22
21:7   22:10, 23
23:18   24:14
25:6
objections   28:1
observing   14:14
obviously   10:17
19:15
Office   1:19
2:13   4:8   27:12
OFFICER   1:17
4:1, 11, 25   5:1
6:8, 11   8:19
10:4, 5, 25   11:17
17:2   19:5, 7

21:3, 4, 13, 16
25:10, 14   26:4,
10
officer-involved
9:20   10:4, 15
11:25   14:23, 25
officers   7:17
9:1, 3, 9   17:25
18:7   19:10
20:1, 8
once   10:14   23:6
oral   4:5
order   8:19
14:24   15:5
orders   15:2
Original   3:11
outside   13:8, 18
oversees   7:17

< P >
P.C   2:5
PAGE   3:1, 5
pages   27:23
particular   26:1
Patrol   7:7
people   13:7
perform   12:7
14:8
personally   12:9,
14
phone   12:20
photograph   3:7,
8, 9   16:25   24:20
photographed
15:12, 15   17:13
photographs   3:6
10:21   11:3, 7, 13
15:19   16:6, 8
19:14   20:25
21:1, 13
phrase   8:22
picture   16:14
19:25   20:1
22:22   24:16
pictures   19:9
20:11   21:14, 18
22:4, 7, 16, 16
23:5, 6, 7   25:7
plaintiff   4:15

Plaintiffs   1:7, 18
2:3
PLAINTIFF'S
3:5   16:5   20:18
24:22
please   4:14, 19,
24   19:17   20:19
24:1
police   6:8, 11, 18
7:2, 17   10:6
15:22   23:10
policies   14:20
15:10   22:3
Policing   7:13, 14
policy   22:16
portfolio   6:13
PRESENT   2:20
procedures
14:20   15:10
22:3
produced   12:18
Professional   1:23
propounded   4:5
28:1, 4
protective   8:19
pursuant   27:7

< Q >
qualified   27:5
quick   13:6

< R >
raised   5:8
ran   7:16
rdowd@dowdlaw.
net   2:9
read   15:8   26:5
reading   18:9
really   14:24
recall   25:22
recollection
16:11
record   4:6, 14,
23   5:17   13:22
26:11
recording   12:19
referenced   3:8, 9
regard   12:12
14:20   15:6, 17
17:8   25:22

Registered   1:23,
24
related   28:9
remarks   28:1
remember   6:15
14:11   23:15, 16,
20, 22, 23, 25
25:12
repeat   5:5
reply   4:4
report   12:3   18:9
reported   27:22
Reporter   1:23,
23, 24   4:19   27:3
reports   25:9
represent   16:5
require   22:4
residence   17:15,
17
respects   28:2
rest   19:9
retained   3:11
retrieve   12:5
Richard   2:4
4:15   5:1
rifle   19:15
20:20, 22   24:2, 4
rifles   19:10
RMR   28:19
Road   2:23
ROBERT   1:17
4:1, 11, 25   26:10
Room   1:20
2:15   13:6, 15, 17
27:12
rooms   13:10, 20
rounds   16:16, 17
RPR   28:19

< S >
saw   13:23   16:7
20:14   21:10
scene   10:17, 18
11:8, 11, 12, 15,
16   13:4   14:10,
12, 14, 17, 22
15:6, 19, 25   19:2
20:25   21:1
22:21   23:14

24:5
scene,   10:21
scenes   10:25
school   5:14, 15
schools   5:10
search   9:15, 18
20:10
Second   7:6
see   12:4   13:10
17:6   19:17
23:14   24:16
25:3, 8
seeing   23:16, 20,
23
seek   8:18
seen   21:18
seize   14:18
seizing   14:25
September   6:22
Services   2:22
set   27:24
Shallow   1:22
27:3   28:19
shell   19:1
shooting   9:20
10:4, 16   11:25
14:15, 23, 25
15:7   25:23
shorthand   27:22
shot   10:4, 5
17:15
shots   17:16
18:13
show   24:10, 20
shown   27:20
shows   20:20
side   20:15, 21
24:21, 25   25:3
signature   26:6,
13   28:5
Simpher   10:23
SKAGGS   1:18
4:1, 11, 25   16:5
20:18   26:10
somebody   11:11
Sommers   11:18
19:7   21:4, 13, 16
25:10, 14
sort   24:2
sound   27:16

**South** 7:*7* 8:*6*, *23* 25:*23*

**special** 15:*2*, *5*

**Specialist** 2:*21*

**specific** 14:*24*

**speculation** 17:*19* 18:*2*, *17* 22:*11*

**spoken** 25:*13*

**spots** 24:*12*

**ST** 1:*11*, *19*, *20* 2:*7*, *16*, *24* 4:*8*, *9*, *12* 5:*9* 7:*1* 27:*13* 28:*11*

**start** 13:*3*

**started** 6:*22* 8:*2*, *2* 13:*8*

**state** 1:*20* 4:*23* 27:*4*, *13*

**STATES** 1:*1* 27:*8*

**Steve** 2:*21*

**Street** 1:*19* 2:*14* 4:*9* 8:*14*, *17* 27:*12*

**suit** 28:*8*

**Suite** 2:*6*, *23*

**supposed** 10:*14* 11:*24* 15:*11*, *14* 23:*4*

**surveillance** 12:*4*, *13*, *17*

**SWAT** 19:*10* 20:*8*

**swear** 4:*19*

**sworn** 4:*2* 27:*18*

**< T >**

**take** 11:*3*, *3*, *10*, *13* 15:*25* 20:*10* 21:*1*, *12*, *13*, *14* 23:*6*, *9*

**taken** 1:*18* 4:*11* 22:*1*, *4*, *7*, *17* 23:*5*, *7* 24:*7*, *9*

**takes** 11:*7*

**talk** 12:*2*

**talked** 25:*16*

**tampered** 22:*5*

**Technician** 15:*4*

**Technician's** 11:*6*

**telling** 5:*20*

**testified** 27:*20*

**testify** 4:*2* 27:*18*

**testimony** 27:*21*, *24*

**Thank** 4:*18* 26:*8*

**thereto** 28:*2*

**thing** 9:*13*, *17* 10:*22* 15:*18*

**Third** 7:*7*

**three** 8:*24*

**time** 4:*13* 5:*3* 7:*5* 8:*5* 9:*24* 13:*4*, *7*, *18* 16:*8*, *22* 17:*4* 18:*1*, *4*, *5*, *7* 20:*9*

**today** 4:*10* 25:*24* 26:*5*

**Today's** 4:*7*

**TORRES** 1:*5*, *5* 4:*12*

**touched** 15:*12* 22:*18*, *19* 23:*1*

**transcribed** 27:*22*

**transcript** 27:*21* 28:*3*

**trial** 27:*10*

**true** 28:*2*

**truth** 4:*3*, *3*, *3* 27:*18*, *19*, *19*

**try** 10:*17* 12:*5*

**two** 8:*24*

**type** 10:*22* 19:*19*

**typewriting** 27:*23*

**< U >**

**un** 16:*18*

**understand** 5:*4* 18:*18*, *22*

**understanding** 15:*19* 19:*6*

**undetermined** 27:*8*

**unfired** 16:*18*

**uniform** 20:*8*

**uniforms** 19:*10*

**Unit** 7:*11*, *19* 8:*1*, *2* 9:*23* 10:*12*, *24* 11:*6*, *24* 15:*4*

**UNITED** 1:*1* 27:*8*

**Unit's** 11:*6*

**University** 5:*22*

**use** 10:*2*, *12* 11:*6*, *24* 14:*21*

**< V >**

**versus** 4:*12*

**vicinity** 8:*23*

**Video** 2:*21* 12:*4*, *19*

**VIDEOGRAPHE R** 4:*6*, *18* 26:*9*

**VIDEOTAPED** 1:*17*

**vs** 1:*9*

**< W >**

**waive** 26:*6*, *7*

**WAIVED** 26:*13* 28:*5*

**walk** 13:*12*

**want** 5:*19* 14:*21* 18:*21* 24:*10*

**wants** 11:*11*

**warrant** 9:*15*, *18* 16:*22* 18:*1*, *8* 20:*10*

**way** 8:*22* 13:*23* 22:*5*

**weapon** 15:*6* 20:*2*, *4*

**weapons** 20:*5*, *9*

**Wednesday** 1:*21*

**went** 5:*21* 6:*6* 13:*5*, *8*, *11*, *17*

**Where'd** 5:*15*

**wit** 4:*5*

**witness** 4:*19* 26:*14* 27:*14*, *16*, *25* 28:*4*, *6*, *11*

**witnesses** 10:*19* 12:*2* 13:*9* 14:*6*, *16*

**word** 14:*21*

**work** 6:*6* 10:*24*

**worked** 7:*6* 10:*24*

**< Y >**

**year** 6:*1*, *16*, *20*

**years** 7:*10*, *11*, *21* 8:*4*