IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GINA TORRES and DENNIS L. TORRES, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 4:19-cv-01525-DDN |
| vs. ) | |
| ) | |
| CITY OF ST. LOUIS, ET AL., ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT OF SAMUEL ANDREWS

COMES NOW the Court's Affiant Samuel Andrews being of sound mind and having personal knowledge of the facts stated in this affidavit and upon my oath states to the Court as follows:

My name is Samuel Andrews and I am qualified to make this affidavit based upon the following:

1)   I performed multiple private training sessions for the SLMPD S.W.A.T. team between 2004 and 2012, included Night Vision and infra-red illumination tactics, terminal ballistics training, and weapons code of arms cleaning and maintenance issues for the 6 semi auto AR10 type sniper weapon systems my company manufactured and sold to SLMPD. In the early 2000 time frame, one of my companies also retro fitted 6 Remington 700 sniper rifles, removing their scopes and mounts, and replaced them with higher quality Night Force scopes and mounts.

2)   2010-2012 - Conducted terminal ballistics tests with St. Louis Metropolitan Police Department, shooting predominantly .556, 7.62, and 9mm ammunition through SLMPD weapons into calibrated ballistic gelatin to gather terminal ballistic performance data and over

**Exhibit 7**

penetration data to be analyzed and used for S.W.A.T. ammunition purchase decisions by the SLMPD.

3)      2003 to Present – I have managed multiple firearms manufacturing, training, and engineering Consulting Companies.  Including A.M. & P.M.,  A.R. Tactical, Tier One Weapon Systems, and from 2017 to present, Managing Member of Freedom Center USA,  LLC.

4)      2001 - Conducted Missouri Peace Officer Standards and Training certification and S.W.A.T. Sniper training for 10 Missouri Law Enforcement Agencies, including St. Louis County (Dan Cunningham), Franklin County (Sergeant Jeff Hartwig), and 6 snipers from St. Louis Metropolitan Police Department (Sergeant Jerome Klipfel's team).

5)      1995 - 2002 – Engineering research and development for Powell River Laboratories on predominantly long range 30 caliber projectiles both subsonic and supersonic.  As well as Powell's processes for testing ammunition accuracy, drag coefficient, temperature sensitivity, terminal performance, and salt water immersion performance.

6)      I was contacted on the day of the shooting of Isaiah Hammett, Plaintiffs' decedent and asked to conduct a ballistics analysis of the shooting. The next morning I travelled from my home in Lebanon, Missouri to 5414 S. Kingshighway and did an extensive inspection of the ballistics evidence left behind after the police turned control of the premises back over to the home owner.  The photographs provided by the St. Louis Police Department accurately depict what I saw at the time of my ballistics analysis.

7)      Other than the personal inspection the day following the shooting I have viewed and reviewed the following:

Kevin Broccard video/audio of the shooting.  From that video/audio I have concluded that the initial shots have a .13 "split", or seconds between shots which is impossible with an AK-47 model rifle because of the length of the trigger pull, the length of the recoil recovery

time and the length of the "trigger reset". In addition, the timing and "signature" or sounds of the shooting are as follows:

| Time of Event: | Event: |
|---|---|
| :08 seconds | Flash Bang; |
| :12 – :14 | 4 shots from a 9 mm cal hand gun from inside the house; |
| :14 – :19 | Barrage of over 25 shots from .223 caliber assault rifles; |
| :19 – 20 | Frantic 3 syllable scream possibly ending with the "f" word; |
| :21 – :22 | 4 shots from .223 caliber assault rifles; |
| :26 – :28 | 6 shots from .223 caliber assault rifles; |
| :32 – :35 | 2 bursts of 6 and 7 shots from .223 caliber assault rifles; |
| :37 – :39 | 2 bursts of 3 shots each from .223 caliber assault rifles; |
| :43 – :44 | Someone yelling "back up" twice; |
| 1:13 – 1:19 | 2 shots followed by approximately 23 shots from multiple .223 caliber assault rifles; |
| 1:30 – 1:35 | 12 to 16 shots fired from .223 caliber assault rifles; |
| 3:50 – 3:58 | "Police we have a search warrant" yelled outside the house; |
| 4:06 – 4:13 | Yelling at house next door; |
| 4:24 – 4:26 | "Come to me, come out of the house". |

8)      Based upon the fact that you can hear the Police announce "Police we have a search warrant" at the 3:50 mark of the recording but at no other time during the video it is clear there was no announcement by the police before the breach, flash bang and shots being fired as claimed by the police in their post shooting interviews and depositions.

9)      Critically, if the officers were planning on a knock and announce search as they claim there would be no reason or any concern about being "compromised" by the camera on the

front of the house because they intended to identify themselves from the beginning. The Officers then claim to have called a "compromise" which is a no knock battering ram breach with a flash bang and approximately 93 shots fired. However, the Officers thereafter claim that they knocked and announced which is directly conflicting evidence. This demonstrates that the Officers were using an alleged "compromise" to turn the knock and announce into a battering ram breach flash bang assault. This has been a known approach since the Supreme Court of Missouri required officers to knock and announce. A no knock raid is much higher risk that shots will be fired because of the surprise element heightening everyone's fear and adrenaline levels.

      10)     I have heard AK-47 model rifles fired tens of thousands of times under many different circumstances and as a result am very familiar with that sound signature because the diameter of the AK-47 bullet is .311 inches (7.62 mm). I have heard .223 inches (5.56 mm) assault rifles fired tens of thousands of times. I have heard 9mm handguns fired tens of thousands of times. The diameter of the cartridge which holds the gun powder causes that gun to make a distinctive sound to myself and the officers from the SWAT team who have testified in this case that they can tell the difference. In addition, Dennis Torres, testified that based on his extensive service in the Vietnam War he can tell that difference. I have repeatedly listened to the Broccard video/audio and at no time do I hear an AK-47 fired. Based upon my comparisons of firearm "signatures" of the 5414 Kingshighway shooting recorded in the Broccard video there can be no doubt or dispute that there was never an AK-47 fired at the time of this raid. The first shots fired are 4 rounds of a 9mm handgun followed by approximately 90 .223 assault rifle shots being fired.

      11)     The officers in their reports contradict who announced police search warrant. When an officer "yells police search warrant" it is established that they are five time's normal volume. In listening to the Broccard video you would clearly hear that if they announced it while they were outside the house as they claim because you can clearly hear it at 3:50-3:58 time frame of the video

after all of the shooting has stopped.  It is my opinion the police did this so the neighborhood witnesses would be able to say they heard "police search warrant" when interviewed after the officer involved shooting as required by standard operating procedure after Officer involved shootings.

12)	There are no bullet hole entries in the home that match a 7.62 caliber gun.  There are many bullet hole entries that match the diameter of a .223. I searched extensively for a 7.62 entry hole as I expected to find, because it would have justified the officers "returning" fire and exonerated them of wrong doing.  Having measured the entry of all bullet holes throughout the home with a caliper I can testify beyond any question that the damage done to the walls of the Torres home shown in the Department's photographs were not done with an AK-47 cal. gun. The width of the entry holes made are either much too small or much too large to have come from and AK-47 model rifle.  They are the width of a .223 bullet or a 9 mm handgun bullet. It is also my understanding that Dennis Torres served in the military in Vietnam, used a .223 caliber assault rifle and heard AK-47s being shot hundreds if not thousands of times and has testified that at no time did he hear and AK-47 fired on June 7, 2017.

13)	In addition, the photographs provided by the department of the alleged AK-47 shell casings taken immediately after the shooting do not show signs of having been recently fired because they do not have any of the normal markings of a recently fired shell. There is in fact demonstrable evidence that the shell's had not come from a cartridge that was recently fired, This is consistent with the Police Department's information that Isaiah Hammett had an AK-47 model rifle that they intended to allege he fired at them.  Of importance, if Isaiah Hammett fired as many rounds as the police claim there would have been many more than 10 shell casings.

14)	In addition, the Department's photographs of the alleged AK-47 shell casings do not match up with the ballistics evidence of the scene. When the round of an AK-47 is ejected to allow

the next round to enter the chamber it causes scratches on the casings as it is ejected causing "extraction marks". The pictures of the casings lying on the floor of the Torres home do not have these shiny markings because the casings in the photographs show oxidation. Therefore, the AK-47 casings had not been fired on June 7, 2017. Therefore the evidence of the scene does not match up with the claims of the SWAT Officers in their post shooting interviews or deposition testimony.

15) During my ballistics investigation I did not find any evidence of damage to the front living room wall which would have to be there if the AK-47 rounds were fired through the bedroom wall and door as claimed by the Officers in their post shooting interviews and depositions.

Further the Court's Affiant sayeth naught.

L. SAMUEL ANDREWS

## ACKNOWLEDGEMENT

State of Missouri     )
                      ) SS
County of St. Louis   )

On this 28th day of May 2020, before me, the undersigned notary, appeared remotely pursuant to Executive Order 20-08, **L. Samuel Andrews**, proved to me through identification documents, and acknowledged to me that he signed the foregoing Affidavit voluntarily for its stated purpose and acknowledged that he executed the same for the purposes therein contained.

In witness whereof, I hereunto set my signature and official seal.

Notary Public

```
DOUGLAS T. DOWD
NOTARY PUBLIC-NOTARY SEAL
STATE OF MISSOURI
COMMISSIONED FOR ST. LOUIS COUNTY
MY COMMISSION EXPIRES OCT. 10, 2023
ID #11250665
```