

| | CITY OF ST. LOUIS | |
|---|---|---|
| JULIAN L. BUSH<br>CITY COUNSELOR | LAW DEPARTMENT<br>1200 MARKET STREET, ROOM 314<br>ST. LOUIS, MO 63103-2864<br>(314) 622-3361 | LYDA KREWSON<br>MAYOR |

January 31, 2018

Alderwoman Megan E. Green
Board of Aldermen
Room 230, City Hall
St. Louis, MO 63103

    RE: City's Self-Insurance Fund (PFPC)

Dear Alderwoman Green:

    Michael Garvin has forwarded your email to him requesting insight concerning the City's self insurance fund, "something called a PFPC," the funds used for paying settlements, and the liability of the City for paying settlements, particularly those involving police misconduct. I will try to satisfy your inquiry concerning these very interesting matters.

    First, what is a PFPC? The Public Facilities Protection Corporation of City of St. Louis is a not for profit corporation incorporated on November 20, 1986. Its articles of incorporation state that the purpose of the corporation is "to implement a program which will assure the continuing provision of municipal and governmental services by various public facilities and functions in the St. Louis metropolitan area which facilities are placed in jeopardy by escalating costs and exposures to exceed fiscal abilities." PFPC's current by-laws provide that the board is self-perpetuating, but they also provide that the Mayor, the President of the Board of Aldermen, the Comptroller, the Budget Director, and the City Counselor of the City of St. Louis or their respective designees are the directors. On September 16, 1987, the City's Board of Estimate and Apportionment adopted a resolution approving the "City of St. Louis Risk Management Program." Among many other things, the program imposed a duty on the City to annually appropriate funds into a "Risk Trust Fund" to be administered by PFPC, which was made responsible for administering that fund and payment of all claims, given its purpose to "insure the City against all claims."

    It is my understanding that over the years PFPC has, just as the September 16, 1987 plan approved by the Board of Estimate and Apportionment provided, paid claims against the City for damages. In addition to paying claims against the City, it has paid

**Exhibit 9**

Alderwoman Megan E. Green
1/31/2018
Page 2 of 3

claims against City employees, other public employees, and also claims against other public corporations and not for profit corporations. It has also contracted with lawyers, has entered into contracts with the circuit court to provide "liability coverage," and it has entered into contracts with other public corporations to provide workers compensation insurance. It is my further understanding that each year the city's budget ordinance contains two line-item in the Law Department's budget styled "PFPC Contribution," one under the heading "City Counselor," and the other under the heading "City Counselor-Police Unit." During the fiscal year, and from time to time, the Comptroller issues warrants on those two accounts for the sums of money appropriated (this year $2,000,000 in the general line-item and $1,000,000 in the police unit line item), and the treasurer transfers those sums to PFPC. PFPC uses the sums so transferred to pay judgments against the City and its employees generally, including those arising from the operations of the Division of Police and from the operations of the old Saint Louis Metropolitan Police Department, to the extent that the latter are not paid out of the State Legal Expense Fund. In addition, I understand that from time to time the Comptroller transfers additional sums of money from various city budgets relating to workers compensation and for surety bond premiums and insurance, and PFPC also receives revenues from other public entities for which it provides workers compensation coverage. Another source of PFPC revenue are payments made by the State in fulfill its obligation to reimburse for payments made to satisfy judgments and settlements arising from the days when the now defunct St. Louis Metropolitan Police Department was the police force serving the City. And from time to time additional funds are transferred to PFPC from general city revenues, as the need arises. During the course of a budget year when settlements are reached and judgments are rendered against the City and City employees, the City Counselor requests that those settlements and judgments be paid by PFPC, and PFPC pays those settlements and judgments. In any event, the current Board of Directors of PFPC comprises Beth Seright, Paul Payne, Nancy Kistler, Todd Waelterman, and Tom Shepard, all city employees, and the current officers are Ms. Kistler, its president, Mr. Waelterman, its vice-president, Mr. Shepard, its secretary, and Mr. Payne, its treasurer.

    Is the City self-insured? Self-insurance is "[t]he practice of setting aside a fund to meet losses instead of insuring against such through insurance." Black's Law Dictionary, 6th ed. In 1979 Ordinance 57821, now codified as sections 4.12.030 and 4.12.040 of the City Code, was approved. Ordinance 57821 purports to adopt a self-insurance plan applicable to claims arising from motor vehicle accidents with motor vehicles operated by City employees and from the dangerous condition of property owned by the City. The self insurance plan that the ordinance adopts is not described, and the ordinance by its terms only applies to claims relating to motor vehicles and property, and not to the myriad other claims that might be and are brought against the City, and by its terms is limited to claims for $100,000 for a single occurrence and $50,000 for a single person. This ordinance states that it was adopted pursuant to section 537.610.1 RSMo, but the limits of liability provided in that statute have since been raised without a commensurate modification of the ordinance. So perhaps the ordinance ought to be revisited. But, in any event, the appropriations made each year in the law department and other budgets

Alderwoman Megan E. Green
1/31/2018
Page 3 of 3

directed at PFPC and workers compensation can be properly thought to be self-insurance.

    The first full fiscal year that the City's Division of Police operated as the successor to the St. Louis Metropolitan Police Department was the fiscal year that began July 1, 2014, which is known as FY15. I understand (I have obtained these figures from Beverly Fitzsimmons of the Comptroller's office)) that the sums that PFPC has paid out that fiscal year and the two subsequent fiscal years now complete generally and those arising from the police force activities specifically are the following. For FY15: $1,806,766 for non-police activities, $125,983 for Division of Police activities, and $1,320,825 for St. Louis Metropolitan Police Department activities. For FY16 $1,669,402 for non-police activities, $176,869 for Division of Police activities, and $816,914 for St. Louis Metropolitan Police Department activities. For FY17, $1,691,954 for non-police activities, $807,302 for Division of Police activities, and $1,060,000 for St. Louis Metropolitan Police Department activities.

    I hope that this responds adequately to your inquiry.

                                               Very truly yours,

                                               Julian L. Bush
                                               City Counselor

JLB:dl