L. Samuel Andrews
Tier One Weapon Systems
2437 Copperwood Dr.
Lebanon, MO 65536
(417) 718-2597
tieroneweapons@att.net

---

Report and Opinions Regarding *Gina Torres, et. al. v. SLMPD, et. al.*

July 2, 2020

**Date of Incident**: June 7, 2017

MATERIALS REVIEWED

Recordings of 911 Calls and Radio Transmissions of June 7, 2017
Dennis Torres 911 call
Start Time 11:14:40
0_c17_027659_911_00_1506_2017_06_07_11_14_40_by_Start_Time_asc

Dispatch rerouting traffic in the area of the shooting
Start Time 11:16:21
0_c17_027659_911_01_Console_10_Left_2017_06_07_11_16_21_by_Start_Time_asc

Female neighbor call to report shots fired nearby (name not provided)
Start Time 11:16:26
0_c17_027659_911_02_1506_2017_06_07_11_16_26_by_Start_Time_asc

Unknown male calling in reporting shots fired in area
Start Time 11:16:41
0_c17_027659_911_03_1509_2017_06_07_11_16_41_by_Start_Time_asc

District 1 contacting SODD to request K9 in area of shots fired to control traffic
Start Time 11:18:23
0_c17_027659_911_04_SODD_Phone_2017_06_07_11_18_23_by_Start_Time_asc

Call from male name Deva (sp?) asking address of shots fired
Start Time 11:19:35
0_c17_027659_911_05_Console_10_Left_2017_06_07_11_19_35_by_Start_Time_asc

Communications Supervisor contacting Metro to divert bus traffic in area of shots fired
Start Time 11:22:50
0_c17_027659_911_06_Console_10_Left_2017_06_07_11_22_50_by_Start_Time_asc


DEFENDANT'S DEPOSITION EXHIBIT C 8/11/20

1

EXHIBIT C

First part of call is an unrelated call for an ambulance; 2nd part of call is a male caller again responding to shots fired asking about staging area and if scene secure
Start Time 11:24:27
0_c17_027659_911_07_1504_2017_06_07_11_24_27_by_Start_Time_asc

2nd part of call with male caller re staging area and is scene secure
Start Time 11:26:12
0_c17_027659_911_08_1504_2017_06_07_11_26_12_by_Start_Time_asc

3rd part of call with male caller re staging area and is scene secure
Start Time 11:27:26
0_c17_027659_911_09_1504_2017_06_07_11_27_26_by_Start_Time_asc

City EMS asking if scene secure
Start Time 11:28:28
0_c17_027659_911_10_Console_10_Right_2017_06_07_11_28_28_by_Start_Time_asc

Call from bystander Joshua Miller to report a suspicious white male in a maroon GMC van parked near the area of shots fired out walking around and getting back in van; something in his hand; maybe phone.
Start Time 11:34:37
0_c17_027659_911_11_1501_2017_06_07_11_34_37_by_Start_Time_asc

FIU Detective Burle asking if officer involved shooting reported; dispatch said unknown at the time and that people inside the home called to say the police were shooting at their house; dispatch and Burle laughed about that
Start Time 11:36:42
0_c17_027659_911_12_Console_10_Left_2017_06_07_11_36_42_by_Start_Time_asc

Unknown caller asking to page FIU Detective Engelhardt to the scene
Start Time 11:40:15
0_c17_027659_911_13_Console_10_Left_2017_06_07_11_40_15_by_Start_Time_asc

Communications supervisor contacting FIU Detective Burle to respond to scene
Start Time 11:42:05
0_c17_027659_911_14_Console_10_Right_2017_06_07_11_42_05_by_Start_Time_asc

Communications supervisor re-contacting Metro re bus diversion in area of shooting
Start Time 11:44:06
0_c17_027659_911_15_Console_10_Right_2017_06_07_11_44_06_by_Start_Time_asc

Med Examiner Tara Rick asking if person taken to hospital or at the scene
Start Time 11:54:14
0_c17_027659_911_16_SODD_Phone_2017_06_07_11_54_14_by_Start_Time_asc

Part 2 of above call Med Examiner Tara Rick being advised they don't know yet if there's a victim or not

Start Time 11:54:58
0_c17_027659_911_17_SODD_Phone_2017_06_07_11_54_58_by_Start_Time_asc

Med Examiner Tara Rick calling back to advise she still has not been requested; says it's been over an hour; is there a victim?; says it's bazaar she hasn't been notified
Start Time 13:18:04
0_c17_027659_911_18_SODD_Phone_2017_06_07_13_18_04_by_Start_Time_asc

SODD contacting District 1 to advise Med Examiner called asking if victim; dispatcher says she has no idea; they haven't told her shit
Start Time 13:18:51
0_c17_027659_911_19_SODD_Phone_2017_06_07_13_18_51_by_Start_Time_asc

SODD calling Med Examiner Tara Rick to advise finally calling you
Start Time 13:58:56
0_c17_027659_911_20_SODD_Phone_2017_06_07_13_58_56_by_Start_Time_asc

Time is 10:28, recording is 4:04 long; Several officers communicating before/after the execution of warrant: One, perhaps Officer Lacy, states there is a car out front with a flat tire that's been there awhile; someone else says they see a person going on the porch, possibly mailman; mentions in route to briefing; Someone says "loading up"; someone says "we're at the door"; then goes silent; another person then says hey guys, he's moving to back of house; then silent; then dispatch stating shots fired
1_c17_027659_INFO_b_0_INFO_B

Time is 11:14, report of shots fired at execution of warrant; recording is 18:17 long; officers radio communicating after the shooting; they also give the officer the Med Examiner's number per her message to call;
2_c17_027659_DIST_1_0_Dist_1

Time is 11:17; calls to stay out of area; recording is 12:50 long; after time stamp 13:04 or 14:12… one of the officers asks them to contact the Med Examiner; states FIU time out is 11:44;
3_c17_027659_SODD_0_SODD

Monitoring Com-Covert Channel - Time is 11:19 a.m. – someone states apparently SWAT shooting it up on Kingshighway and Eichelberger
4_c17_027659_COM_CVRT_0_Com_Cvrt

Monitoring Radio Transmissions on District 3 Channel – Time is 11:38a.m.; regarding location of shooting
5_c17_027659_DIST_3_0_Dist_3

Monitoring Radio Transmissions on District 4 Channel dispatch to location of shooting
6_c17_027659_dist_4_0_Dist_4

Audio Recordings of June 10, 2017 interviews:
Neighbor Mark Fendler(5418 S. Kingshighway) (taken by Det. Burle&Jauer)
Neighbor Johnny Wysinger(5419 S. Kingshighway) (taken by Det. Burle&Jauer)
Neighbor Debra Hammond (5419 S. Kingshighway) (taken by Det. Burle&Jauer)
Officer Ronald Allen (taken by Lt. Engelhart)
Officer Joshua Becherer (taken by Lt. Engelhart)
Officer Lance Coats (taken by Lt. Engelhart)
Officer GlennonFrigerio (taken by Lt. Engelhart)
Officer Jon Long (taken by Lt. Engelhart)
Officer Nicholas Manasco (taken by Lt. Engelhart)
Officer Mark Seper (taken by Lt. Engelhart)
Sergeant John Jones (taken by Lt. Engelhart)
Dennis Torres (taken by Detective Burle 6/7/17)

Transcripts of Statements given on 6/10/17:
Officer Ronald Allen
Officer Joshua Becherer
Officer Lance Coats
Officer GlennonFrigerio
Officer Nicholas Manasco
Officer Mark Seper
Officer Jon Long
Sergeant John Jones
Dennis Torres (6/7/17)

Depositions:
Officer Ronald Allen 11/14/19
Officer Joshua Becherer 11/25/19
Officer Lance Coats 11/21/19
Officer GlennonFrigerio 11/14/19
Officer Nicholas Manasco 11/25/19
Officer Mark Seper 11/21/19
Officer Robert Skaggs
Officer Timothy Boyce 11/14/19
Dennis Torres 1/10/20 2/5/20
Erin Ely, M.D. 2/5/20
Jennifer Sommer 2/6/20

Other Audio
IMG_3252 Audio Extracted.wav
VIDEO0091 Audio Extracted_01.wav
Three Syllables from Baker's Phone Video.wav
&%Back Up&% Or &Back Down&% Car Video.wav
&%Search Warrant&% After Flash Bang.wav

Photographs
301 Images of 5414 Kingshighway C17027659_Sub 011 (taken by Jennifer Sommer)
256 Images of 5414 Kingshighway and evidence/envelopes C17027659_Sub 012 (taken by Jennifer Sommer)
18 Images of evidence at 5414 KingshighwayC17027659_Sub 016(taken by Officer Benjamin Lacy)
51 Images of officers and weaponsC17027659_Sub 025 (taken by Officer Robert Skaggs)
14 Images of Isaiah Hammett's clothesC17027659_Sub 042 (taken by Erica Oppelz)
49 Images of Isaiah Hammett Lab Photos from Attorney Hibbs 10/11/17 [WARNING GRAPHIC] (PA020310-PA020358)
Firearm Ballistic Images (p.1-159) 17-027659

72 Images of interior of 5414 Kingshighway from Amir Brandy - Smith & Associates
32 Images of 5414 Kingshighway Samuel Andrews Site Inspection 2/19/19
3 Videos of 5414 Kingshighway Samuel Andrews Site Inspection 2/19/19
1 Image of Isaiah Hammett bloody fingerprints on back of TV - photo from RKD 5/17/18
7 Images of blood inside the home and 1 video of outside of 5414 Kingshighway from Gina Torres
86 Autopsy Exam Case Photos taken by Med Examiner Heather Hartle (2017-1352-Autopsy Photos 001-086)
20 Images of scene taken by Med Examiner Tara Rick (2017-1352-Scene Photos 001-020)

Videos
Kevin Broccard cell phone video of 5414 Kingshighway - VIDEO0091
Kevin Broccard cell phone video of 5414 Kingshighway - VIDEO0092
Martha Ferdinand cell phone video of 5414 Kingshighway - IMG_3252
Isaiah Hammett Video - Snapchat Version taken by (?) rcvd from Martha Ferdinand
18996758_1119864448157172_6347975300009164800_n-FULL taken by (?) rcvd from Martha Ferdinand

Documents
Triple Threat Armory Sales Receipt 5/12/17
Search Warrant of 5414 S Kingshighway Blvd 5/31/17
Affidavit in Support of Search Warrant 5/31/17
STL City Discovery documents - City 000089-000103
Search and Seizure Warrant of 5414 S Kingshighway Blvd. 10/23/17
Protective Order 8/9/17
SLMPD Incident Report CN 17-027659 (Pg.001-083)
17-027659 Lab Reports (Pg.0001-0455)
Post-Mortem Examination and Pathology Findings (Pg. 1-15)
Calls and Service Info Related to 5414 S Kingshighway (Pg. 1-25)
Detailed drawing of residence 1/10/20
ETU Officer Jennifer Sommer Case Notes pursuant to Sunshine Request received 1-23-20
Plaintiffs Rule 26 Disclosures 10/15/19
Defendants Rule 26 Disclosures 10/15/19

Physical Evidence Inspected and Photographed on June 23, 2020
Bedroom door
Sporter Model Semi-Automatic 7.62 caliber Rifle (hereinafterSporterModel Rifle)
Other firearms including black powder muzzle loaders
seized from 5414 Kingshighway on 6/7/17
Isaiah Hammett's clothing
Ballistics seized from 5414 Kingshighway on 6/7/17
Ballistics from SLMPD Lab Test Shots
Ballistics shield

QUALIFICATIONS
**See** Curriculum Vitae (Attached as Exhibit A)
Fee schedule:
$150.00 per hour for investigation, review
of evidence, report preparation and testimony.
Court History: None

INVESTIGATION, FINDINGS AND CONCLUSIONS

**Inspections**: Residence at 5414 Kingshighway on June 8, 2017 and February 19, 2019; Inspected Department Confiscated Physical Evidence at SLMPD evidence/
     property room on June 23, 2020.

I was contacted on the day of the shooting of Isaiah Hammett, and asked to conduct a ballistics analysis of the shooting. The next morning I travelled from my home in Lebanon, Missouri to 5414 S. Kingshighway and did an extensive inspection of the ballistics evidence left behind after the police turned control of the premises back over to the home owner. As set forth above, I performed additional inspections on February 19, 2019 and June 23, 2020 of the scene and physical evidence andhave reviewed extensive amounts of audio, video, photographic and testimonial evidence. The photographs provided by the St. Louis Police Department accurately depict what I saw at the time of my ballistics analysis. Based upon all of the foregoing my opinions and conclusions are as follows:

1. **Isaiah Hammett Was Unarmed WhenHe Was Shot 24Times**

There was no blood on the Sporter Model Rifle recovered from the scene. Based on my review of the photographs taken on June 7, 2020 and my own visual inspection on June 23, 2020, there is absolutely no blood spatter, high or low speed, on the Sporter Rifle. Ms. Sommer, the evidence technician officer, testified and documented in her reports that there were areas of tissue and blood, on the south wall of the dining room, on the door frameand of course on the floor of the dining room where Mr. Hammett's body was photographed. Sommer Depo. p.

6

33. Despite the copious amount of blood documented as a result of Mr. Hammett being shot 24 times, Sommer did not document any blood on the Sporter Rifle. The gun was turned over to Officer Skaggs for conveyance back to police headquarters. Officer Skaggs similarly testified that, based on the photographs taken by Officer Sommers he did not see any blood anywhere on the gun. Officer Skaggs Depo., pp. 24-25. Likewise, Medical Examiner Erin Ely, M.D.testified that she did not see any blood on the gun in Defendants' photographs of the Sporter Rifle. Dr. Ely Depo. pp. 49-50.Photographs of Mr. Hammett taken by the police show blood splattered on his stomach, and yet there is none on the rifle laying right next to him.

The department never performed a gunshot residue test on Mr. Hammett's hands toprove that he had fired the Sporter Rifle even though his hands were bagged at the scene for the purpose of preserving "trace evidence" including any evidence of gunshot residue. Sommer Depo., pp. 52, 65-66. It is the police department's decision whetherto perform a gunshot residue test, and there would be no reason not to do so where the police claim they were fired at first to prove it was a justified killing.

On both inspections of the home I conducted after the shooting I measured every bullet hole. There are no bullet hole entries in the home that match the Sporter Rifle which is a 7.62 caliber gun. There are many bullet hole entries that match the diameter of a .223, which is the caliber of rifle the police were using. I searched extensively for a 7.62 entry hole as I expected to find, because it would have justified the officers "returning" fire and exonerated them of wrong doing. Having measured the entry of all bullet holes throughout the home with a caliper I can testify beyond any question that the damage done to the walls of the Torres home shown in the Department's photographs were not done with a Sporter Rifle 7.62x39mm caliber. gun. The width

7

of the entry holes made are either too small, having come from a .223 caliberor too large having come from a9 mm handgun bullet.     `

The Officer's assertions that numerous rounds were fired from the bedroom, through the wall is contradicted by the ballistics evidence. The damage done to the bedroom walls was done by the rounds fired by the Police with 9mm handguns and .223 caliber assault rifles.

None of the Officer were shot during this supposed exchange of gun fire. I did not find any evidence of damage to the front living room wall which would have been there if the Sporter Rifle rounds were fired through the bedroom wall and towards the Officers at the front of the house. If, as Officer Frigerio claimed, bullets were flying past him, there would be damage to the interior east facing wall of the home. Frigerio Depo., p. 38. Furthermore, there was no damage to the ballistic shield that I inspected on June 23, 2020, that was supposedly protecting the Officers when they entered the house. Lastly,In my experience with firearms, it would be highly unlikely that a left handed person would hold their rifle to their right shoulder while firing. And yet, Officers photographed the Sporter Rifle laying on Mr. Hammett's right side.

Based on my specialized knowledge and experience I conclude within a reasonable degree of ballistics certainty that Isiah Hammett was not armed with the Sporter Rifle during this raid, because there was no ballistics damage from a 7.62 caliber rifle in the house, and no ballistics damage in the areas where one would expect based on the officers testimony, and that no person or ballistics shield was struck by a bullet, and that no blood spatter was on the gun Mr. Hammett was supposedly shouldering when he was shot 24 time.

2.  **Isaiah Hammett was Shot and killed while Lying On the Dining Room Floor**

Dr. Erin Ely testified that most bullets striking Isaiah Hammett, including the three lethal wounds to the neck, chest and pelvis, "tracked upward, backward, and rightward." Medical Examiner's Report. In her video deposition, Dr. Ely demonstrated the trajectories of the bullets on an anatomical figure with a dowel rod, again showing how the bullets moved upward backward and rightward through the body. The barrel of the guns used to kill Mr. Hammett had to be positioned below the fatal wounds and yet none of the Officers testified that they were firing at Mr. Hammett from below him. Officers Becherer, Manasco, Seper and Coats all testified they fired at Isaiah Hammett from an upright position from the living room into the dining room and that he was also upright and pointing a rifle at them at the time. Because the Officers were not lying on the floor shooting up at Isaiah, the only reasonable inference is that their positions were reversed: Isaiah Hammett was lying on the floor while the officers shot down into his body.

Also, several entry holes on the left side of the body of Isaiah Hammett's body are not consistent with Isaiah Hammett facing the SWAT Officers when he was shot.

Based on my review of the Department's photographs, Assistant Medical Examiner Erin Ely's report and deposition, Mr. Hammett's clothes and my own specialized knowledge of ballistics, I conclude within a reasonable degree of ballistics certainty that Isiah Hammett was lying down when he was fatally wounded.

3. **Review of Kevin Broccard Video/Audio**

Because there is only a very limited recording of SODD transmissions identified as 1_c17_027659_INFO_b_0_INFO_B (4 minutes and 4 seconds) over a time period of 3 hours and the Officers did not have a body camera recording and the SWAT team's transmissions were not recorded during execution the only video or audio recording we have of the shooting is that

9

of citizen Kevin Broccard. I have heard SporterModel Semi-AutomaticRifles fired tens of thousands of times under many different circumstances and as a result am very familiar with that sound signature because the diameter of the Sporter Rifle bullet is .311 inches (7.62 mm) and because that cartridge fires at a higher pressure level than a 9 mm cartridge. I have heard .223 inches (5.56 mm) assault rifles fired tens of thousands of times. I have heard 9mm handguns fired tens of thousands of times. The diameter of the cartridge which holds the gun powder causes Sporter Rifle Semi-Automatic to make a very distinctive sound, which the Officers agreed with in their depositions.

I have repeatedly listened to the Broccard video/audio and at no time do I hear anSporter Model 7.62x39 Semi-Automatic Rifle fired. Based upon my comparisons of firearm "signatures"/sounds of the 5414 Kingshighway shooting recorded by the Broccard video there can be no doubt or dispute that there was never an Sporter Model Semi-Automatic Rifle fired at the time of this raid. The first shots fired are 4 rounds of a 9mm handgun followed by approximately 90 .223 assault rifle shots being fired. This is substantiated by the ballistics reports of the department.

In addition, from the Broccard video/audio of the shooting I have concluded that the initial shots have a .13 "split", or seconds between shots which is not possible with this particularSporter Model Semi-Automatic Rifle because of the length of the trigger pull, the length of the recoil recovery time and the length of the "trigger reset".

Based on my experience described above with firearms and their individual sound signatures and the testimony of the SWAT officers and Dennis Torres with firearms and their individual sound signatures, the timing and "signature" or sounds made by the weapons fired during the 4 minute and 26 seconds of that video are as follows:

| Time of Event: | Event: |
|---|---|
| :08 seconds | Flash Bang; |
| :12 – :14 secs. | 4 shots from a 9 mm cal hand gun from inside the house; |
| :14 – :19 | Barrage of over 25 shots from .223 caliber assault rifles; |
| :19 – 20 | Frantic 3 syllable scream possibly ending with the " f " word; |
| :21 – :22 | 4 shots from .223 caliber assault rifles; |
| :26 – :28 | 6 shots from .223 caliber assault rifles; |
| :32 – :35 | 2 bursts of 6 and 7 shots from .223 caliber assault rifles; |
| :37 – :39 | 2 bursts of 3 shots each from .223 caliber assault rifles; |
| :43 – :44 | Someone yelling "back up" twice; |
| 1:13 – 1:19 | 2 shots followed by approximately 23 shots from multiple .223 caliber assault rifles; |
| 1:30 – 1:35 | 12 to 16 shots fired from .223 caliber assault rifles; |
| 3:50 – 3:58 | "Police we have a search warrant" yelled outside the house; |
| 4:06 – 4:13 | Yelling at house next door; |
| 4:24 – 4:26 | "Come to me, come out of the house". |

**4. The Sporter Model Rifle was Never Fired on June 7, 2017**

The Department's photographs of the alleged Sporter Rifle shell casings taken immediately after the shooting are not consistent with being fired by that particular gun on that day. The pictures of the casings lying on the floor of the Torres home show oxidation.

The Sporter Semi-Automatic 7.62 caliber rifle that was legally owned by Mr. Hammett was never tested to determine if it had been recently fired that day. Nor was it tested for fingerprints even though that too would have corroborated the Officer's testimony that Mr.

11

Hammett fired at them. ETU Officer Sommer was unaware of any such testing or evidence. Sommer Depo., p. 62.

From theBroccard video/audio I have concluded that several of the initial shots have a .13 "split", or seconds between shots which is impossible with thatparticular Sporter Model Rifle because of the length of the trigger pull, the length of the recoil recovery time and the length of the "trigger reset". In addition, the timing and "signature" or sounds of the initial shots do not match a 7.62x39 fired by an untrained shooter.

There are no bullet hole entries in the home that match a 7.62x39 caliber gun. There are many bullet hole entries that match the diameter of a .223. I searched extensively for a 7.62x39 entry hole as I expected to find, because it would have justified the officers "returning" fire and exonerated them of wrong doing. Having measured the entry of all bullet holes throughout the home with a caliper I can testify beyond any question that the damage done to the walls of the Torres home shown in the Department's photographs were not done with that Sporter Model Semi-Automatic Rifle.

Based on my specialized knowledge and experience I conclude within a reasonable degree of ballistics certainty that the 10 7.62 caliber shell casings allegedly found in Mr. Hammett's bedroom where not fired on June 7, 2017, due to the photographs of the casings shortly after the incident, the number of casings recovered, the sound signature on the Broccard audio, and the lack of any other corroborating evidence that Mr. Hammett fired the Sporter Rifle that day.

5. **There Was No Announcement**

In the Broccardvideo/audio the police announce "police we have a search warrant" at 3:50 in the recording, after all shots had been fired, but at no other time during the video.It is clear

there was no announcement by the police prior to the breach, flash bang and shots being fired as the police claimed in their post shooting interviews and depositions.

Not only do the officers contradict who announced "police, search warrant" in their post shooting interviews. In listening to the Broccard video you would clearly hear that if they announced it while they were outside the house as they claim because you can clearly hear it at 3:50-3:58 time frame of the video after all of the shooting has stopped. It is my opinion the police did so after the shooting so the neighborhood witnesses would say they had a recollection of hearing "police search warrant" when interviewed after an officer involved shooting as required by department procedures.

Critically, if the officers were planning on a knock and announce search as they claim there would be no reason or any concern about being "compromised" by the camera on the front of the house because they intended to identify themselves from the beginning. The Officers then claim to have called a "compromise" and immediately executed a no knock battering ram breach with a flash bang and fired approximately 93 shots. However, the Officers thereafter claim that they knocked and announced which directly conflicts with calling a compromise which demands an instant transition to a no knock raid. This demonstrates that the Officers were using an alleged "compromise" to turn the knock and announce into a battering ram breach flash bang assault. A no knock raid is much higher risk that shots will be fired because of the surprise element heightening everyone's fear and adrenaline levels.

The police had no intention of knocking and announcing their presence. They knew there was a camera on the residence days before because of Officer Lacy's surveillance. I was able to see the camera from across the street. A no-knock raid increases the probability of shots being fired which increases the risk to the occupants of the residence. The presence of a

camera on the outside of the residence would not increase the risk because you are planning on knocking and announcing yourselves as police anyway. The officer's behavior is in direct conflict with their claim that they intended to knock and announce as required by the Search Warrant and is directly contradicted by their claim that they in fact did knock and announce. In addition, their claim of compromise allowed them to circumvent the order entered by the judge.

It is not uncommon in a situation with a knock and announce warrant to call a compromise to falsely justify escalating the knock and announce to a no knock warrant.

All opinions expressed herein are within a reasonable degree of scientific and ballistics certainty. I reserve the right to modify or supplement my opinions as additional information and evidence is made available to me.

L. Samuel Andrews

07/02/2020
Date

14

14