UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GINA TORRES, *et al.*,          )
                                )
          Plaintiffs,           )
                                )
     v.                         )          No. 4: 19 CV 1525 DDN
                                )
CITY OF ST. LOUIS, *et al.*,    )
                                )
          Defendants.           )

## <u>MEMORANDUM AND ORDER</u>

This action is before the Court on the following motions:

(a)    of defendant City of St. Louis (City) to dismiss Counts 3, 4, 7, and 8 for failure to state a claim upon which relief can be granted (Doc. 33);

(b)    of defendants Lance Coats, Glennon P. Frigerio, Joshua D. Becherer, Nicholas J. Manasco, Ronald Allen Jr., John C. Jones, Mark S. Seper, Jon B. Long, Tim Boyce, and Benjamin R. Lacy (defendant Officers) for failure to state a claim upon which relief can be granted (Doc. 35);

(c)    of defendant Benjamin R. Lacy to dismiss Counts 2, 4, 6, and 7 for failure to state a claim upon which relief can be granted (Doc. 57);

(d)    of defendant Officers and defendant City for summary judgment (Doc. 65);

(e)    of all defendants for a protective order staying discovery until the motion for summary judgment is ruled (Doc. 144);

(f)    of all defendants to quash certain deposition subpoenas (Doc. 150);

(g)    of plaintiffs Gina Torres and Dennis L. Torres to defer or deny without prejudice defendants' motion to exclude testimony of L. Samuel Andrews until close of expert discovery (Doc. 152);

(h)    of defendants for an extension of time to disclose their expert witness (Doc. 155);

(i)    of plaintiffs for the appointment of a special master or in the alternative to compel discovery (Doc. 166); and

(j)    of plaintiffs for leave to take additional depositions (Doc. 168).

## PLAINTIFFS' ALLEGATIONS

Plaintiffs allege the following in their first amended complaint. During the times alleged, plaintiffs Gina Torres and Dennis L. Torres resided in the City of St. Louis in a home owned by plaintiff Dennis L. Torres.  Dennis Torres is the surviving grandfather of decedent Isaiah M. Hammett.  Gina Torres is the surviving mother of decedent whose death was allegedly wrongly caused by defendants.

Plaintiffs allege that on June 7, 2017, at approximately 11:10 a.m., defendant Officers and other St. Louis Metropolitan Police Department personnel executed a search warrant at plaintiffs' residence and in the operation detonated a noise diversion device commonly known as a "flash bang." Officers then entered the residence without identifying themselves, discharging their weapons 93 times, shooting decedent 24 times, causing his death. (Doc. 32. at ¶¶ 8, 11, 16.)  Plaintiffs allege there was no probable cause for the search warrant, which may have been based on false or misrepresented information from an informant, provided to officers prior to the raid to target the decedent. (*Id* at ¶ 8, 11, 15)  Decedent and plaintiff Dennis Torres were the only persons in the residence at the time of the shooting. (*Id*. at ¶ 15.)  Plaintiffs allege that evidence does not demonstrate that decedent used a firearm, and evidence reveals that officers staged the scene after the shooting to support the desired narrative and filed false police reports. *(Id.* at ¶ 14.)  Plaintiffs allege defendant Officers failed to make a complete inventory of property removed from the scene and failed to preserve evidence. *(Id*.)

The amended complaint alleges the following claims:

Count 1:      by plaintiff Gina Torres for use of excessive force under 42 U.S.C. § 1983 against defendant Officers;

Count 2:      by plaintiff Gina Torres for civil conspiracy under 42 U.S.C. §§ 1983 and 1985 against defendant Officers;

Count 3:      by plaintiff Gina Torres for failure to train, supervise, or discipline under 42 U.S.C. § 1983 against defendant City;

Count 4:      by plaintiff Gina Torres for wrongful death under RSMo § 537.080 against defendant Officers and defendant City;

Count 5:      by plaintiff Dennis L. Torres for use of excessive force and unreasonable search and seizure under 42 U.S.C. § 1983 against defendant Officers;

Count 6:      by plaintiff Dennis L. Torres for civil conspiracy under 42 U.S.C.
§§ 1983 and 1985 against defendant Officers;

Count 7:      by plaintiff Dennis L. Torres for failure to train, supervise, or
discipline under 42 U.S.C. § 1983 against defendant City; and,

Count 8:      by plaintiff Dennis L. Torres for infliction of emotional distress
under Missouri law against defendant Officers and defendant City.

(Doc. 32.)

## DEFENDANTS' MOTIONS TO DISMISS

Defendants move to dismiss plaintiffs' Counts 2-4 and 6-8 of the first amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Federal Rule of Civil Procedure 8 requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," with each allegation being "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1).  Under Rule 12(b)(6), a party may move to dismiss all or part of a complaint for its failure to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(6).  To overcome a Rule 12(b)(6) motion a complaint "must include enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A legally sufficient complaint will "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and will state a claim for relief that rises above mere speculation, providing more than just labels and conclusions. *Twombly*, 550 U.S. at 555.

In reviewing plaintiffs' amended complaint, the Court must accept all of plaintiffs' factual allegations as true and draw all inferences in their favor.  But the Court is not required to accept the legal conclusions plaintiffs draw from the facts alleged.  *Retro Television Network, Inc. v. Luken Commc'ns, LLC,* 696 F.3d 766, 768-69 (8th Cir. 2012).  Additionally, the Court "is not required to divine [plaintiffs'] intent and create claims that are not clearly raised, … and it need not conjure up unpled allegations to save a complaint."  *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (internal citations and quotation marks omitted).

## DISCUSSION

## Defendant City's Motion to Dismiss (Doc. 33)

### 1. Sovereign Immunity (Counts 4 and 8)

Plaintiffs assert claims in Counts 4 and 8 under Missouri law for the wrongful death of Isaiah M. Hammett and for infliction of emotional distress against defendant City.   Defendant City argues that the Missouri doctrine of sovereign immunity shields it from liability for these tort claims. Plaintiffs argue that defendant City waived sovereign immunity by being self-insured for their claims.

Under Mo. Rev. Stat. § 537.600,  sovereign immunity generally protects public entities from liability for tort claims with limited exceptions for (1) injuries directly resulting from negligent acts or omissions by public employees arising from the operation of a motor vehicle in the course of their employment; and (2) injuries caused by a dangerous condition on a public entity's property.  § 537.600.1(1) and (2).  Since wrongful death and infliction of emotional distress do not fall within these narrow statutory exceptions, defendant City  argues plaintiffs' Count 4 and 8 claims should be dismissed.

Plaintiffs argue that defendant City has waived its sovereign immunity.  Sovereign immunity for tort claims may be waived under § 537.610 if a public entity purchases liability insurance or adopts a self-insurance plan, to the extent of the amount and type of coverage provided in the policy or plan.  *See* § 537.610.1; *Hendricks v. Curators of Univ. of Mo*., 308 S.W.3d 740, 743 (Mo. Ct. App. 2010); *Perkins v. Frye*, No. 4:20 CV 1433 HEA, 2020 WL 7263533, at *3 (E. D. Mo. Dec. 10, 2020).

Defendant City argues that City Ordinance 57821 "adopts a self-insurance plan for the purpose of injuries directly resulting from the negligent acts or omissions of employees of the City arising out of (1) the operation of motor vehicles within the course of their employment and (2) injuries caused by the condition of property in the City of St. Louis."  (Doc. 34-1.)

Plaintiffs argue that defendant City has also waived sovereign immunity for Missouri state law claims because the City is self-insured by its Public Facilities Protection Corporation (PFPC), a not-for-profit corporation into which the City pays funds annually. (Doc. 32, ¶ 44.) For the reasons set out in the discussion of this point in *Green v. City of St. Louis*, 4:19 CV

1711 DDN, 2020 WL 7056015, at *6-8 (E. D. Mo. Dec. 2, 2020) (collecting cases), the Court denies the City's sovereign immunity argument as a basis for dismissing plaintiffs' state law claims. *See also Green v. City of St. Louis, Missouri,* 4:18 CV 1629 JCH, Doc. 40, slip op. at 7-9 (E. D. Mo. Sept. 3, 2019).

The motion to dismiss is denied as to Counts 4 and 8 against the defendant City of St. Louis.

### 2. *Monell* Claims (Counts 3 and 7)

Plaintiffs include claims against City in Counts 3 and 7 under § 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Plaintiffs allege their constitutional rights were violated by Saint Louis Metropolitan Police Department policies, practices, or customs, including unreasonable search and seizure, routine use of excessive force in the absence of any threat of force or violent activity and without an opportunity to comply.

Liability for a constitutional violation under § 1983 may attach to a municipality only if the violation resulted from (1) an "official municipal policy," *Monell*, 436 U.S. at 691, (2) an unofficial "custom," *id*.; or (3) a deliberately indifferent failure to train or supervise. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). Defendant City seeks to dismiss plaintiffs' claims under each of these theories.

### a. Official Municipal Policy and Unofficial Custom

An official policy is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). A policy may take the form of a policy statement, local ordinance, regulation, or decision officially adopted and promulgated by a local government's officers. *Monell*, 436 U.S. at 690.

Unofficial custom, on the other hand, is characterized as misconduct so pervasive among non-policymaking employees of the municipality "as to constitute a 'custom or usage' with the force of law." *Id.* at 691. "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."

*Board of C'nty Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).  Specifically, a claim of unofficial custom requires:

> (1)    The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2)    Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and,
>
> (3)    Injury to the plaintiff caused by acts pursuant to that custom, i.e., the custom was the moving force behind the constitutional violation at issue.

*Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017).

The difference between an official policy and an unofficial custom is found in the ultimate factual details and may not be apparent at the pleadings stage.  Indeed, the Eighth Circuit Court of Appeals has recognized that at the pleadings stage, a plaintiff "may not be privy to the facts necessary to accurately describe or identify" the policies or customs which caused the deprivation of their constitutional right.  *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).  Thus, "the failure . . . to specifically plead the existence of an unconstitutional policy or custom, in itself, is not fatal to [a plaintiff's] claim for relief." *Id*.  Nevertheless, "[a]t the very least, [] a plaintiff must allege facts which would support the existence of an unconstitutional policy or custom," *i.e.*, "allegations, reference or language from which one could begin to draw an inference" of an unconstitutional policy or custom to survive a motion to dismiss. *Teague v. St. Charles Cnty.*, 708 F. Supp. 2d 935, 940 (E.D. Mo. 2010); *Crumpley-Patterson v. Trinity Lutheran Hospital*, 388 F.3d 588, 591 (8th Cir. 2004).

In the instant case, plaintiffs have not pled sufficient facts to support an inference that the alleged police misconduct resulted from an unconstitutional policy or custom of the defendant City.  Plaintiffs invoke this Court's rulings in *Morgan-Tyra v. City of St. Louis, Mo.,* Case No. 4:18 CV 1799 AGF, 2019 WL 5597094 (E. D. Mo. Oct. 30, 2019).  In that case, plaintiff was shot and injured by police after making a 911 emergency call.  Plaintiff made § 1983 claims for the use of excessive force against the defendant police officer and municipal liability against the defendant city for failure to train, supervise, or discipline.  The city moved

to dismiss the § 1983 claims, because plaintiff did not adequately allege municipal liability under *Monell*.

The court in *Morgan-Tyra* ruled, stating, although it was a close question, that plaintiff had "plausibly alleged municipal liability with respect to her excessive force claim." *Morgan-Tyra*, 2019 WL 5597094, at *5.  The court stated:

> Specifically, Morgan-Tyra alleges a pattern of prior incidents of excessive force, including lethal force involving officers use of firearms, based on publicly available Internal Affairs Division data showing that hundreds of complaints of excessive force were brought against officers between 2006 and 2014.  Morgan-Tyra further alleges that the same data reflects that charges against officers were sustained in only approximately 6% of these cases, and that many additional instances of excessive force were known to the City's police department, such that these statistics significantly understate the extent and scope of the constitutional violations.
>
> * * *
>
> It is questionable whether Morgan-Tyra will ultimately meet such a burden in this case because her complaint does not describe in much detail the factual circumstances of the incidents giving rise to the prior excessive force complaints here, or the investigations relating thereto.

*Id.*  That said about the use of excessive force claim, the court nevertheless dismissed plaintiff's claim against the city for failure to train or supervise, stating, plaintiff "has pled no factual, non-conclusory allegations regarding the nature of the relevant training and supervision practices here, why they were inadequate, or how the City was deliberately indifferent  in adopting them."  *Id.*

As in *Morgan-Tyra*, plaintiffs in the case at bar, seek to hold the defendant City liable under § 1983 for plaintiffs' injuries caused by the defendant Officers' alleged use of excessive force because they resulted from 8 specifications of the "policies,[1] customs, practices and

---

[1] One of the alleged specifications of unlawful policies involves "officers of the Department in fraudulently concocting affidavits" for search warrants. (Doc. 32 at 13-14, ¶ 36(h)).  To support that specification, plaintiffs allege specifically only that "one officer leaving the Department under investigation, after evidence emerged that he had manufactured numerous affidavits in support of search warrants which were substantially identical or verbatim, with only the address and names changed.  On information and belief, criminal charges were never pressed or pursued against that officer in spite of the foregoing."  (*Id.*).  Generally, even if proven, a single instance of alleged police misconduct does not, as a matter of law, establish

usages" of the St. Louis Police Department officers acting unlawfully.  (Doc. 32 at ¶¶ 36, 63.) Plaintiffs allege that defendant City has actual notice of these customs "because, among other things, a pattern of prior incidents of shootings and other use of excessive force by officers," and despite "these prior incidents, Defendants and others failed to train and supervise their officers, have done nothing to remedy these pervasive customs, practices and usages, and in fact have turned a 'blind eye' to them." (*Id.* at  ¶ 37.)  Plaintiffs allege the failure to train, discipline, or supervise by defendant City has resulted in the police using excessive force as a matter of custom, the City possesses the personnel files of the defendant Officers "which may disclose additional grounds for Defendant's failure to train, supervise, or discipline Defendant Officers." (*Id.* at ¶¶ 38, 39.)

Plaintiffs' allegations are vague, conclusory, and lack factual detail.  For example, plaintiffs allege "hundreds of allegations of excessive force and physical abuse brought against officers" of the SLMPD in the "years prior," that charges were "almost never sustained," and "statistics significantly understate the extent and scope of the constitutional violations.  (Doc. 32, ¶¶ 35-38, 64.)   These factual allegations are insufficient to allow the inference that the conduct plaintiffs complain of resulted from an unconstitutional, widespread, persistent pattern of policy, practice, or custom of defendant City.

Therefore, the defendant City's motion for dismissal of plaintiffs' *Monell* claims in Counts 3 and 7 based on an unconstitutional policy or custom regarding the use of excessive force is sustained.

### b. Failure to Train, Supervise, or Discipline

Defendant City also moves to dismiss Count 3 and Count 7, alleging the defendant City failed to train, supervise, or discipline SLMPD officers.  City may be liable under a theory of failure to train if: (1) City's police training and supervision practices were inadequate; (2) it was deliberately indifferent to the rights of others in adopting these training and supervision practices, and this failure to train and supervise was a result of deliberate and conscious choices City made; and, (3) City's alleged training and supervision deficiencies caused a constitutional

---

an unconstitutional custom for § 1983 liability. *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013).

deprivation.  *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013); *Andrews v. Fowler*, 98 F.3d 1069,1076 (8th Cir. 1996).  In addition, a plaintiff must show that the City "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Brewington v, Keener*, 902 F.3d 796, 803 (8th Cir. 2018).

In *City of Canton v. Harris,* 489 U.S. 378 (1989), when the Supreme Court expanded its municipal liability jurisprudence to include failure-to-train claims, it characterized them as a species of policy claims, where the training or failure to train is the policy or custom to be proven.  489 U.S. at 391-92.  Failure to train may be shown when "the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need." *Id*. at 390, n. 10; *Parrish v. Ball*, 594 F.3d 993, 998 (8th Cir. 2010) ("the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [city] can reasonably be said to have been deliberately indifferent to the need.").

Plaintiffs argue that defendant City, despite knowing the Police Department's use of excessive force, failed to train officers by deliberate and conscious choice.  Plaintiffs note that their allegations must be taken in context of the allegations regarding custom and usages.  Here, the allegations as pled are insufficient for the same reasons as stated under the above heading *a. Official Municipal Policy and Unofficial Custom*.  In *Morgan-Tyra*, 2019 WL 5597094 at *5, although that court denied the city's motion to dismiss based on a custom of excessive force, the court nevertheless granted the city's motion to dismiss the claim based on the theory of failure to train and supervise, explaining the plaintiff had pled no factual, non-conclusory allegations regarding the nature of the relevant training, supervisory practices, why they were inadequate, or how the City was deliberately indifferent in adopting them.

In spite of plaintiffs' allegations about the operation of the Police Department and the officers' alleged use of excessive force, plaintiffs' allegations fail to state a plausible claim against defendant City for failure to train, supervise, or discipline the defendant Officers.  As in *Morgan-Tyra*, plaintiffs have "pled no factual, non-conclusory allegations regarding the nature of the relevant training and supervision practices here, why they were inadequate, or how the City was deliberately indifferent in adopting them."   *Morgan-Tyra*, 2019 WL

- 9 -

5597094, at *5.  Nothing at all is alleged about what the City's training, supervision, and disciplining of its police officers actually involve and how, as a policy, practice, or custom, they are constitutionally deficient. Here, the facts as pled are similarly conclusory and deficient, and would require this Court to stretch the facts, even accepting all allegations as true and noting that this is the pleadings stage.

Accordingly, the defendant City's motion to dismiss plaintiffs' *Monell* claims in Counts 3 and 7 based on failure to train and supervise is sustained.

### Defendant Officers' and Defendant Lacy's Motions to Dismiss (Docs. 35 and 57)

Defendant Officers and defendant Lacy move to dismiss Counts 2, 4, 6, and 8 for plaintiffs' failure to state a claim.

### 1.  Qualified immunity.

Defendant Officers argue they are shielded from liability for damages in Counts 2 and 6 if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, citing *Harlow v. Fitzgerald*, 457 U.S. 817, 818 (1982). Officials only enjoy qualified immunity if they act in good faith, *i.e.,* that a reasonable officer would not have known that his actions violated the Constitution; therefore, qualified immunity does not apply to discretionary acts done in bad faith or with malice.  *David v. Board of Educ. of City of St. Louis*, 963 S.W.2d 679, 689 (Mo. Ct. App. 1998).  A defendant acts in bad faith when he breaches "a known duty through some ulterior motive," or does some "conscious wrongdoing." *Id.*  Bad faith "ordinarily contains a requirement of actual intent to cause injury." *Id*.

The question before the Court is whether plaintiffs' allegations, considered in the light favorable to them, indicate that defendant Officers violated clearly established constitutional standards in the incident underlying the plaintiffs' claims.  *Saucier v. Katz*, 533 U.S. 194, 2000 (2001).

Considering plaintiffs' allegations of the execution of the search warrant to be true, as it must, the Court concludes the allegations establish that defendant Officers are not entitled to qualified immunity on the § 1983 claims in Counts 2 and 6.  The circumstances of the execution

of the warrant far exceed the issue of whether the search warrant was facially sufficient.  (Doc. 36 at 8.)  Allegations in the complaint demean the basis for the issuance of the warrant in the first place, regardless of whether the warrant was lawful on its face.

Defendant Officers are not entitled to the dismissal of Counts 2 and 6 based upon the allegations in plaintiffs' complaint.  *Whisman Through Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997).

### 2.  Conspiracy under §§ 1983 and 1985

Plaintiffs assert claims against defendant Officers for conspiracy under 42 U.S.C. §§ 1983, 1985 in Counts 2 and 6. (Doc. 32 at 10, 20.)  Defendant Officers argue that both Counts should be dismissed under the intracorporate conspiracy doctrine because plaintiffs failed to plausibly allege the existence of a conspiracy with specificity.  "To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) the defendant conspired with others to deprive him of constitutional rights; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured the plaintiff."  *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *Id*.  To prove a 42 U.S.C. § 1985(3) conspiracy claim, a plaintiff must show "(1) the existence of a conspiracy; (2) that the purpose of the conspiracy was to deprive him [or her] of his [or her] civil rights; (3) an act in furtherance of the conspiracy; and (4) injury." *McDonald v. City of Saint Paul*, 679 F.3d 698, 706 (8th Cir. 2012).  This requires factual support to suggest a meeting of the minds between defendants, directed toward conducting unconstitutional acts.  *Kelly v. City of Omaha*, 813 F.3d 1070, 1078 (8th Cir. 2016.  However, evidence of an agreement to deprive a plaintiff of constitutionally guaranteed rights is typically circumstantial.  *Livers v. Schenck*, 700 F.3d 340, 361 (8th Cir. 2012).

Defendant City moves to dismiss the claim on the basis that it is barred by the intracorporate conspiracy doctrine, citing *Kelly*, which provides that "a local government entity cannot conspire with itself through its agents acting within the scope of their employment." 813 F.3d at 1078.  City argues plaintiffs did not allege the officers were acting outside of the scope of their employment duties.  Plaintiffs respond that *Kelly* is not controlling here, as the

Eighth Circuit has not determined whether the intracorporate conspiracy doctrine applies to § 1983 conspiracy claims. This Court has denied motions to dismiss § 1983 conspiracy claims based on the doctrine. *See Powers v. City of Ferguson*, 229 F.Supp.3d 894, 906 (E.D. Mo. 2017).

In any event, defendant City's argument for application of the intracorporate conspiracy doctrine is premature. The Eighth Circuit has only applied the doctrine to conspiracy claims under 42 U.S.C. § 1985, and it has not addressed whether the doctrine applies to § 1983 conspiracy claims. In the absence of direction from the Eighth Circuit, this Court declines to apply the doctrine, particularly at the pleading stage. Some district courts have affirmatively held that the intracorporate conspiracy doctrine does not protect conspiracies to commit excessive force, even when within the scope of employment duties, reasoning that "the intracorporate conspiracy doctrine was created to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions that are later alleged to be discriminatory," *Newsome v. James*, 2000 WL 528475, at *15 (N.D. Ill. Apr. 26, 2000), and "police misconduct ... does not fit that mold because conspiracy and cover-up are not the product of routine police department decision-making." *McDorman v. Smith*, 2005 WL 1869683, at *6 (N.D. Ill. Aug. 2, 2005); *see also Morgan-Tyra*, 2019 WL 5597094, at *6.

For these reasons, City has not established it is entitled to dismissal of plaintiff's civil conspiracy claim based on the intracorporate conspiracy doctrine.

Further, the allegations in this case are similar to those alleged in *Morgan-Tyra*. In that case, the court found plaintiff plausibly alleged a § 1985 (3) conspiracy claim where an agreement was alleged between officers to provide false evidence, including them falsely stating that they had identified themselves as police officers prior to the shooting, as part of a scheme to cover up one officer's use of excessive force and to justify the unlawful arrest. *Morgan-Tyra,* 2019 WL 5597094 at *6. In this case plaintiffs plausibly allege similar facts. For example, officers were personally motivated to act in an improper manner to help a fellow officer and a neighbor who lived near the plaintiffs. Evidence disclosed by defendants from the scene disproves the narrative police report. Audio evidence shows defendant Officers failed to properly announce their presence. Officers misrepresented or falsified information relating to the pre-raid investigation of decedent for the purpose of excusing excessive force.

Evidence demonstrates that officers staged the scene after the shooting.  Forensic evidence demonstrates that decedent did not use a firearm as described in the police report.  Evidence demonstrates that the weapon was moved and placed under the decedent.  Officers failed to preserve evidence including shell casing evidence.  Some bullets were fired after decedent was incapacitated on the ground.  Several officer defendants have now testified that decedent did not fire while being shot 24 times.  And in depositions officers have testified that they acted as they did because they were compromised by a video camera in the house.  Taken together, these facts plausibly allege a conspiracy sufficient to survive a motion to dismiss.

Accordingly, defendants' motion to dismiss the conspiracy claims is denied.

### 3.  Official Immunity

Plaintiffs' Counts 4 and 8 assert tort claims under Missouri law for wrongful death and for infliction of emotional distress.  Defendant Officers argue they are entitled to official immunity from suit in their individual capacities on these claims.  Official immunity is a Missouri doctrine that "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008).  A discretionary act is one that requires "the exercise of reason in the adoption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. 2006).  Police officers are entitled to official immunity for any negligent discretionary acts, because public employees should be able to make judgments affecting public safety and welfare without concerns about possible personal liability.  *Blue v. Harrah's North Kan. City, LLC*, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005).

However, official immunity does not apply to "discretionary acts done in bad faith or with malice." *Id.*  A defendant acts in bad faith when he breaches "a known duty through some ulterior motive," or does some "conscious wrongdoing." *Id.*  Bad faith "ordinarily contains a requirement of actual intent to cause injury." *Id.*  "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 447 (Mo. banc 1986).

Here, defendant Officers argue that plaintiffs fail to allege that their "actions were in bad faith and constituted a conscious abuse of their powers and duties as police officers" and that bare allegations do not satisfy the bad faith exception. The Court is not persuaded. Plaintiffs' complaint specifically alleges that defendants acted in bad faith, with malice, and in conscious abuse of their powers as police officers.  For example, plaintiffs allege defendant Officers failed to determine that imminent danger of serious physical injury or death existed before they discharged their firearms ninety-three times and used deadly force on decedent, shooting him twenty-four times. (Doc. 32, ¶ 11.)  Plaintiffs also allege that audio evidence shows that officers failed to identify themselves before opening fire, fabricated evidence to obtain a search warrant, concealed and altered evidence, and filed false police reports.  (Doc. 32 ¶¶ 14-16.)

Further, to the extent defendant Benjamin Lacy argues plaintiffs' allegations are devoid of malicious motive, purpose, or conscious wrongdoing, plaintiffs allege the "principle motivations of Defendant Officers and other officers of the [SLMPD] in targeting Plaintiff's decedent . . . was an improper effort to help an officer of the [SLMPD] and a neighbor of Plaintiffs who lived near the subject property, who had a history of disputes with Decedent." (Doc. 32 ¶ 12.)  Plaintiffs additionally allege malicious motive, in that, officers took steps to cover up the acts of excessive force, forensic evidence demonstrates that officers falsely reported the facts of the killing of decedent to create an appearance not in accordance with the actual facts of the shooting, and that prior to the raid Benjamin Lacy provided other officers with false pre-raid investigation information "for the purpose of excusing the use of excessive force against [decedent]." (Doc. 32 ¶¶ 14, 30-31.)

At this pleading stage, taking the allegations of excessive force and fabrication of evidence in support of a search warrant as true, plaintiffs pled sufficient facts to overcome defendant Officers' official immunity argument.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 65)
### Legal Standard

 Summary judgment is appropriate "[i]f there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party." *Shrable v. Eaton*

*Corp.*, 695 F.3d 768, 770-71 (8th Cir. 2012); *see also* Fed. R. Civ. P. 56(a). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The burden shifts to the non-moving party to demonstrate that disputes of fact exist only after the movant has made its showing. *Id.* It is the nonmoving party's burden to proffer specific factual support by affidavit or other evidence to avoid summary judgment. *Perry v. Martin*, 2013 WL 6331474, at *1 (E.D. Mo. Dec. 5, 2013).

<u>**Discussion**</u>

Defendant Officers argue that there is no genuine issue of material fact on their entitlement to qualified immunity on plaintiffs' § 1983 claims, Counts 1, 2, 5, and 6, and official immunity on Counts 4 and 8. (Doc. 65 at 2.) Defendant City argues that it is entitled to summary judgment on Counts 3 and 7 because there is no genuine issue of material fact that the City did not have a policy, practice, or custom that caused a constitutional violation and further argues that sovereign immunity shields it from Counts 4 and 7, plaintiff's state law claims. (*Id.*)

### 1. <u>Use of Force (Counts 1 and 5)</u>

Defendant Officers argue that no constitutional violation occurred because the officers' use of deadly force was objectively reasonable. Plaintiffs argue that defendants' motion is entirely premised only on the officer's version of the facts, ignoring contradictory facts that defendant Officers' use of force was not objectively reasonable.

It is constitutionally reasonable for a police officer to use deadly force where the officer has probable cause to believe the suspect poses a threat of serious physical harm to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). The Supreme Court and the Eighth Circuit have held that an officer is justified in using force when confronted with a suspect who, in one manner or another, threatens the officer with a deadly weapon. *Id.*; *Partlow v. Stadler*, 774 F.3d 497, 502-03 (8th Cir. 2014). However, a constitutional violation under the Fourth Amendment occurs if it is clear to a reasonable officer that his or her conduct was unlawful

under the particular circumstances. *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).

Here, defendants' motion for summary judgment and plaintiff's opposition to the motion proffer testimony that contradicts the other's about the incident underlying plaintiff's claim.  Defendants argue that the dispositive question is "whether approaching the officers with a raised assault rifle would have given a reasonable officer on the scene probable cause to believe the decedent to be a threat," arguing that use of force was reasonable and did not violate plaintiffs' rights.  (Doc. 66, Ex. 1 at 5.)  Defendant Officers argue they are entitled to summary judgment because "members of the SWAT team approached Hammett's residence and loudly announced their presence to execute a search warrant by shouting loudly 'Police! Search Warrant,'" (Doc. 67, Defs.' UMF ## 22-23, 26) then, after the front door was breached, gunfire came through the bedroom door and wall (*Id*. at ##30-32, 40-43, 47, 51-52, 54) and "Hammett appeared in the doorway to the dining room carrying an AK-47-style rifle . . . pointed in the officer's direction." (*Id*. at ## 61-68).  Therefore, defendant Officers reasonably perceived that decedent posed a threat of death or serious bodily harm.

Conversely, plaintiffs assert that defendant Officers' force was not reasonable. Specifically, plaintiffs argue that expert and audio evidence refutes the officers' testimony that they planned to execute the search warrant with a knock and announce, intending to identify themselves, and yet officers alleged a "compromise" circumstance changed the entry into a no-knock raid which, contradicts the claim that they yelled "Police! Search warrant."  (Doc 108, Ex. 1 at 4-5.)   Further, plaintiffs argue that ballistic evidence, audio recordings, and eyewitness and expert evidence directly contradicts the officers' self-serving claims that decedent was carrying and fired an AK-47 when he was shot. (*Id*. at 6-9.)  For example, expert Sam Andrews who trained the Saint Louis Metropolitan Police Department SWAT team on numerous occasions, conducted an extensive inspection of the ballistic evidence at the premises and found no bullet hole in the home that match a 7.62 caliber gun and did not find any evidence of damage to the front living room wall which would have been there if the AK-47 rounds were fired through the bedroom wall and door as claimed by the officers.  (*See* Ex. 7, Andrews Affidavit, ¶ 15.)   Moreover, Mr. Andrews and plaintiff Dennis Torres opine that an AK-47 model signature sound could not be heard during the incident, on the audio/video

recording of the incident.  (*See Id*. at ¶ 7; Doc. 108, Ex. 1 at 8; Def's Ex. R, Dennis Torres Depo. at 99-100.)  Finally, Dennis Torres refutes testimony that there was a weapon next to the decedent's body as pictured in the police photographs and, although the decedent's hands were bagged to preserve trace evidence, the police department elected not to perform a gunshot residue test. (Def's Ex. M at 55, 65-66.)  Plaintiff has proffered evidence of sufficient facts that a reasonable factfinder could find defendants used excessive and unreasonable force in violation of clearly established law and defendant Officers are not entitled to qualified immunity.

Defendant Officers argue that they did not use force against plaintiff Dennis Torres and that he "suffered no injury."  (Doc. 66, Ex 1 at 16.)   Defendant Officers rely on *Milstead v. Kibler*, 243 F.3d 157 (4th Cir. 2001).  In that case the Fourth Circuit stated that "where a seizure is directed appropriately at the suspect but inadvertently injures an innocent person, the innocent victim's injury or death is not a seizure that implicates the Fourth Amendment because the means of the seizure were not deliberately applied to the victim."  243 F.3d at 163-64.  That reasoning applies where officers use appropriately reasonable force and accidentally injure an innocent bystander.  However, an officer is not entitled to qualified immunity with regard to execution of a search warrant where the conduct is not objectively reasonable.  *See Walden v. Carmack*, 156 F.3d 861, 873 (8th Cir. 1998).

Here, the alleged unreasonable force allegedly resulted in re-traumatization of plaintiff's Vietnam related PTSD when officers "opened fire on Dennis, nearly killing him simply because he called out his grandson's name" [while] "he was trying to get up in his wheelchair" [and] two more shots went off right by his head. (Doc. 108, Ex. 1 at 20.)  Plaintiff stated he heard more shots and thought they were firing at him because decedent was already down on the floor.  (*Id*.)

Accordingly, the parties' distinctly different accounts create a genuine dispute of material fact that must be decided at trial.  Therefore, all counts containing use of force issues are denied summary judgment.

### 2.  Defendant Officers Boyce and Lacy

Defendant Officers Boyce and Lacy argue they applied no force at all against decedent or plaintiffs.  Specifically, Boyce was the breacher who carried the battering ram and breached the front door of the residence, and when gunfire erupted, he jumped off the porch into the alleyway. (Doc. 67, Defs.' UMF ## 20, 39.)  Detective Lacy was not a member of the SWAT, did not enter the residence at any point prior to decedent's death, and did not fire any shots during the execution of the search warrant.  (*Id*. at # 82.)

Plaintiffs proffer evidence that defendant Lacy briefed the officers and provided them surveillance before the search operation and may have provided false information that decedent had been involved in a murder.  (Doc. 108-1 at 15.)  Further, defendant Boyce's involvement as the officer with the battering ram, who then jumped out of the way of the gunfire, is insufficient to shield him from potential liability for participation in the acts alleged in the amended complaint.

### 3. Conspiracy Claims (Counts 2 and 6)

Plaintiffs assert claims against defendant Officers for conspiracy under 42 U.S.C. §§ 1983 and1985, in Counts 2 and 6. (Doc. 32 at 10, 20.)  To the extent defendant Officers argue they are protected by qualified immunity, officials only enjoy qualified immunity if they act in good faith, *i.e.,* that a reasonable officer would not have known that his actions violated the Constitution; therefore, qualified immunity does not apply to discretionary acts done in bad faith or with malice.  *David v. Board of Educ. of City of St. Louis*, 963 S.W.2d 679, 689 (Mo. Ct. App. 1998).  A defendant acts in bad faith when he breaches "a known duty through some ulterior motive," or does some "conscious wrongdoing." *Id.*

Plaintiffs argue defendants violated their clearly established rights to be free from the use of excessive and unreasonable force and to be free from the manufacture of false evidence. The previous discussion supports an inference of bad faith.  Thus, the officers are not entitled to qualified immunity for the reasons already discussed earlier in this opinion.

Defendant Officers also argue that both counts should be barred under the intracorporate conspiracy doctrine.  For the reasons set forth above, that argument is ruled against defendants as a matter of law.

### 4.  Municipal Liability (Counts 3 and 7)

Plaintiffs assert claims under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) for municipal liability (Count 3 and Count 7), alleging that constitutional rights violations were caused by SLMPD policies, practices, or customs, including unreasonable search and seizure, routine use of excessive force in the absence of any threat of force or violent activity, and without opportunity to comply.   Defendant City argues that it is entitled to summary judgment on both counts because plaintiffs have not proffered evidence sufficient to support that an unconstitutional action was directly caused by the City's indifference to an unofficial custom or failure to train. (Doc. 66, Ex. 1 at 14-15.)

Liability for a constitutional violation under Section 1983 may attach to a municipality only if the violation resulted from (1) an "official municipal policy," *Monell*, 436 U.S. at 691, (2) an unofficial "custom," *Id*.; or (3) a deliberately indifferent failure to train or supervise. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018).

In the instant case, plaintiffs have not proffered sufficient facts from which a reasonable factfinder could draw an inference that the alleged police misconduct resulted from an unconstitutional policy, practice, or custom.  Specifically, plaintiffs argue that over a period of ten years, 5% of complaints regarding use of force investigated by the police division were sustained and concludes, without support, that "[t]he fact that 19 out of 20 officers facing complaints of abuse and excessive force suffered no consequences shows that the department permitted this custom to exist and did nothing to remedy it."  (Doc. 66 at 13-15.)  However, statistics alone are not enough when they do not include specific facts.  *See White v. City of St. Louis*, No. 4:18 CV 518 SRC, 2019 WL 6022259, at 9 (E.D. Mo. Nov. 14, 2019) (dismissing similar conclusory assertions regarding the alleged number of excessive force incidents over a six-year period for failure to state a claim).   Here, plaintiffs fail to establish that these complaints were in fact instances in which excessive force was used, do not offer the facts

underlying any of the incidents, and fail to establish the defendant Officers alleged use of force in this case was *because* of a widespread custom of excessive force.

Plaintiffs have not proffered evidence of sufficient facts to support the assertion that the City's supervision, training, and disciplining practices were inadequate, with notice of and deliberate indifference to the constitutional rights of others.

Therefore, plaintiffs' § 1983 claims for municipal liability fail.  Defendant City's motion for summary judgment is granted on Counts 3 and 7.

### 5.  State Law Claims (Counts 4 and 8)

Plaintiff Gina Torres asserts a claim against defendant Officers for wrongful death in Count 4, and plaintiff Dennis Torres asserts a claim for infliction of emotional distress against defendant Officers in Count 8.  Defendant Officers argue they are entitled to official immunity in the state law claims. (Docs. 66, Ex 1 at 20-23.)

As previously discussed, plaintiffs proffer evidence and facts sufficient for a reasonable factfinder to find defendants used excessive and unreasonable force or manufactured false evidence in bad faith.  Accordingly, defendant Officers are not shielded by official immunity and the parties' distinctly different accounts create a clear dispute of material fact.

### 6.  Defendant City and self-insurance

On plaintiffs' state law claims in Counts 4 and 8, defendant City argues, as it does above, that the doctrine of sovereign immunity shields it from liability for tort claims. (Doc. 66, Ex. 1 at 23.)  Plaintiffs argue that the defendant City waived sovereign immunity by purchasing liability insurance that covers such claims.  (Doc. 108 at 24-27.)  The parties have proffered contradictory evidence about whether the defendant City of St. Louis has a system of self-insurance sufficient to waive its defense of sovereign immunity.

Under Mo. Rev. Stat. § 537.600, sovereign immunity generally protects public entities from liability for tort claims, with limited exceptions, to include: (1) injuries directly resulting from negligent acts or omissions by public employees arising from the operation of a motor vehicle; or, (2) injuries caused by a dangerous condition on a public entity's property.

Defendant City argues it should be granted summary judgment since wrongful death and infliction of emotional distress do not fall within one of the narrow exceptions to § 537.600.

However, sovereign immunity for tort claims may be waived under § 537.610 if a public entity (1) purchases liability insurance; or, (2) adopts a self-insurance plan, to the extent of the amount and type of coverage provided in the policy or plan. *Hendricks v. Curators of Univ. of Mo.*, 308 S.W.3d 740, 743 (Mo. Ct. App. 2010). Here, defendant City argues that City Ordinance 57821 "adopts a self-insurance plan for the purpose of injuries directly resulting from the negligent acts or omissions of employees of the City arising out of (1) the operation of motor vehicles within the course of their employment and (2) injuries caused by the condition of property in the City of St. Louis." (*See* Doc. 66, Ex. 1 at 25.)

Conversely, plaintiffs argue that defendant City has waived sovereign immunity for Missouri State claims because the City is self-insured by the Public Facilities Protection Corporation ("PFPC"), a not-for-profit corporation into which the City pays funds annually. (Doc. 32, ¶ 44.)

As set forth above at page 4, there are disputed issues of fact on whether the defendant City is self-insured sufficiently to have waived sovereign immunity to plaintiff's claims in this action. Therefore, summary judgment is denied.

## DISCOVERY MOTIONS

All defendants seek a protective order staying discovery until the motion for summary judgment is ruled. (Doc. 144). That motion is denied as it is mooted by this Memorandum and Order.

Defendants move to quash the deposition subpoenas for Charles D. Eckenrodt and Christine G. Eckenrodt. (Doc. 150.) Defendants argue that plaintiffs have already exceeded, albeit by some agreement of the defendants, the presumptive number of 10 depositions the parties may take without leave of court, pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(i). Defendants do not agree to the taking of more depositions.

While not specifically responding to defendants' motion to quash the depositions, plaintiffs have moved for leave to take additional depositions. (Doc. 168.) At this time, plaintiffs identify 9 additional individuals they request leave to depose. (Doc. 168 at 3-4.)

These individuals, including the corporate designee of defendant City, are described as having relevant information about the subject matter of the action.  Plaintiffs leave open the possibility they will request leave to depose more individuals if further discovery discloses a need. Defendants do not oppose taking the depositions of 5 individuals, but object to 4 others, because plaintiffs have failed to make a particularized showing of why their depositions are necessary to the case.  (Doc. 170 at 1-2.)

The Court has considered the arguments of both sides and concludes that the number of depositions currently requested by plaintiffs is not excessive, not shown to be unnecessary, and to the Court's assessment is proportional to the allegations and claims made in this case. The Court is inclined to allow plaintiffs the additional, identified depositions sought by their motion.  However, the Court will defer ruling this motion (Doc. 150) until the hearing set below.

Plaintiffs also have moved to defer or deny without prejudice defendants' motion to exclude the testimony of L. Samuel Andrews until close of expert discovery (Doc. 152); for the appointment of a special master or in the alternative to compel discovery (Doc. 166); and for leave to take additional depositions (Doc. 168).

The Court sees no need for the appointment of a special master.  *See* Fed. R. Civ. Pro. 53(a)(1).  That relief is denied. However, all other discovery issue relief sought by the discovery motions described above will be considered during the hearing set below.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendant City of St. Louis to dismiss plaintiffs' amended complaint (Doc. 33) **is sustained as to Counts 3 and 7.   Claims in Counts 4 and 8 remain against defendant City of St. Louis.**

**IT IS FURTHER ORDERED** that the motion of defendant Officers to dismiss the amended complaint (Doc. 35) **is denied.**

**IT IS FURTHER ORDERED** that the motion of defendant Benjamin Lacy to dismiss the amended complaint (Doc. 57) **is denied.**

**IT IS HEREBY ORDERED** that the motion of defendants for summary judgment (Doc. 65) **is granted to defendant City of St. Louis as to Counts 3 and 7.   In all other respects, the motion is denied.**

**IT IS FURTHER ORDERED** that defendants' motion for a protective order staying discovery until the motion for summary judgment is ruled (Doc. 144) **is denied as moot**;

**IT IS FURTHER ORDERED** that a **hearing is set for Wednesday, April 21, 2021, at 1:00 p.m.** on all then-pending discovery disputes and matters, including:

(1)   the following motions:

    (a)   of all defendants to quash certain deposition subpoenas (Doc. 150);

    (b)   of plaintiffs to defer or deny without prejudice defendants' motion to exclude testimony of L. Samuel Andrews until close of expert discovery (Doc. 152);

    (c)   of defendants for an extension of time to disclose expert witness (Doc. 155);

    (d)   of plaintiffs to compel discovery (Doc. 166);  and

    (e)   of plaintiffs for leave to take additional depositions (Doc. 168); and

(2)   the scheduling of all future proceedings .


                                       **/s/   David D. Noce**
                                 **UNITED STATES MAGISTRATE JUDGE**

Signed on March 25, 2021.